39 So.3d 1117 (2009)
Ex parte M.D.C.
(In re M.D.C. v. K.D.).
1071625.
Supreme Court of Alabama.
September 30, 2009.
*1119 Daniel S. Campbell, Fort Payne, for petitioner.
Jamie Logan, Guntersville, for respondent.
BOLIN, Justice.
M.D.C. ("the mother") petitioned this Court for a writ of certiorari after the Court of Civil Appeals affirmed the trial court's judgment holding that the obligation of K.D. ("the father") to pay child support was automatically extinguished when his parental rights were terminated. We granted certiorari review to consider a material question of first impression for this Court: whether the Alabama Child Protection Act, § 26-18-1 et seq., Ala. Code 1975 ("CPA"),[1] which governs the termination of parental rights, also terminates a parent's responsibility to pay child support.

Facts and Procedural History
Two children were born of the parties' marriage. The mother had a child from a previous marriage. The parties divorced in February 2003. In August 2003, the father pleaded guilty to three counts of second-degree rape. He was sentenced to prison and has since been released. The victim was the mother's minor child from the previous marriage. The divorce judgment awarded custody of the parties' two children to the mother and ordered the father to pay $540 per month in child support. In October 2005, a juvenile court granted the mother's petition seeking to terminate the father's parental rights to their two minor children.
On January 4, 2007, the State, on behalf of the mother, filed a petition to require the father to show cause why he should not be held in contempt for his alleged failure to pay his child-support obligation. The father answered, denying the material allegations in the petition. After a hearing, the trial court entered a judgment on May 6, 2007, finding the father in arrears in the amount of $16,730 in child support plus $486 in interest. The father and the State filed motions to alter, amend, or vacate the judgment or, in the alternative, for a new trial.
Pursuant to Rule 59.1, Ala. R. Civ. P., the parties agreed to extend the time for the trial court to rule on the parties' postjudgment motions. The trial court granted both parties' requests for a new trial. The case was submitted to the trial court on the pleadings, the previously taken testimony, and certain stipulations by the *1120 parties. On January 8, 2008, the trial court entered an order finding that the father's obligation to pay child support was extinguished when his parental rights were terminated in October 2005. The mother appealed.
A majority of the Court of Civil Appeals noted that the CPA, which governed the termination of parental rights in 2005, does not address the issue of a parent's obligation to pay child support after his or her parental rights are terminated. M.D.C. v. K.D., [Ms. 2070465, August 15, 2008] 39 So.3d 1105 (Ala.Civ.App.2008). The Court of Civil Appeals noted that this case presents an issue of first impression. However, that court cited several decisions in which it says appellate courts have indicated that a parent is no longer obligated to pay child support after the parent's parental rights have been terminated. The Court of Civil Appeals stated that a majority of states addressing the issue have held that the termination of parental rights extinguishes a parent's duty to support the child. The court held that the purpose of Alabama's juvenile laws, particularly in parental-termination cases, is to provide children with stability and permanency and that to further the goal of permanently placing a child, which may include adoption after the termination of parental rights, the parental relationship with the child must be totally severed after parental rights are terminated.

Standard of Review
"On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals." Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996).

Analysis
Section 26-18-7(a), Ala.Code 1975 (now § 12-15-319), of the CPA provides as follows:
"If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents."
It is clear from the statute that the juvenile court may terminate a parent's parental rights if that parent is unwilling or unable to discharge his or her "responsibilities to and for the child." Nothing in the CPA addresses whether a parent's duty to pay child support is terminated when his or her parental rights are terminated.
In a well written dissent to the Court of Civil Appeals' opinion, Judge Moore opined that a parent's obligation to pay child support is not extinguished under the CPA when the parent's parental rights are terminated. After considering the record and the main opinion of the Court of Civil Appeals, we find the dissenting opinion accurately interprets the law on this subject, and we adopt its reasoning.
As Judge Moore noted, the CPA does not define "parental rights," nor does it define "responsibilities to and for the child." 39 So.3d at 1120. The Alabama Juvenile Justice Act ("the AJJA"), § 12-15-1 et seq., Ala.Code 1975,[2] clarifies the meaning of those terms and there are *1121 cases recognizing the interplay between the CPA and AJJA. See e.g., Ex parte Beasley, 564 So.2d 950 (Ala.1990); Clemons v. Alabama Dep't of Pensions & Security, 474 So.2d 1143 (Ala.Civ.App.1985). Additionally, the legislature merged the CPA and AJAA, effective January 1, 2009. See Act No. 2008-277, Ala. Acts 2008. In his dissenting opinion, Judge Moore stated:
"Section 12-15-1(17) [now § 12-15-102(16)], Ala.Code 1975, defines `legal custody' as
"`[a] legal status created by court order which vests in a custodian the right to have physical custody of the child and to determine where and with whom the child shall live within the state and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, clothing, education, and ordinary medical care, all subject to the powers, rights, duties, and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities. . . .'
"The AJJA then provides that `residual parental rights and responsibilities' include:
"`[t]hose rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including, but not necessarily limited to, the right of visitation, the right to consent to adoption, the right to determine religious affiliation, and the responsibility for support.'
"§ 12-15-1(24) [now § 12-15-102(23)], Ala.Code 1975. Our supreme court has stated that related statutes should, when possible, be construed in pari materia, Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 988 (Ala.1999), and that legislative definitions are binding on the court. See McWhorter v. State Bd. of Registration for Prof'l Eng'rs & Land Surveyors, 359 So.2d 769, 773 (Ala.1978).
"Reading the statutory definitions of parental rights and responsibilities found in § 12-15-1 into § 26-18-7 [now § 12-15-319, as amended] reveals the legislature's intent:
"`If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their [parental duties, including the duties to protect, to educate, to care for, to provide for, to maintain, and to support the child], or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the [parents' rights, including the rights to custody, to visitation, to control the child's education, training, discipline, and religious affiliation, and to consent to adoption].'
"Construing the two statutes together, if a juvenile court finds clear and convincing evidence indicating that a parent is unable to discharge his or her parental responsibilities, the juvenile court may on that basis terminate the rights of the parent to the child,3 but not the parent's responsibility to provide child support.4
"3 The new juvenile code, which takes effect on January 1, 2009, defines `termination of parental rights' as `[a] severance of all rights of a parent to a child.' Ala. Acts 2008, Act No. 2008-277, § 16. This definition clarifies the legislative intent that a judgment terminating parental rights severs the rights of the parent to the child but does not sever *1122 the rights of the child to the parent, which includes the right to support. See Ex parte Tabor, 840 So.2d 115, 120 (Ala. 2002), quoting with approval Willis v. Levesque, 402 So.2d 1003, 1004 (Ala.Civ. App.1981) (recognizing that children have an inherent right to child support from parents). When a legislature amends a statute to define a previously undefined term, it must be considered that the legislature has attempted to clarify any ambiguity in that term and the court should take notice of that action when determining the legislative intent. See Alfa Mut. Ins. Co. v. City of Mobile, 981 So.2d 371, 383 (Ala.2007).
"4 I do not mean to be understood as saying that a juvenile court may never terminate child support. I am merely saying that § 26-18-7 does not authorize a juvenile court to terminate child support based solely on clear and convincing evidence supporting grounds for termination of parental rights."
M.D.C. v. K.D., 39 So.3d at 1110 (Moore, J., dissenting) (footnote omitted).
In his dissent, Judge Moore recognized two long standing principles of statutory construction: (1) that words used in a statute are given their commonly understood meaning and (2) that a court is bound to give effect to the legislative purpose behind a statute. With regard to those principles and the CPA, he stated:
"Even if the court cannot read § 12-15-1 into § 26-18-7, the term `parental rights' cannot be construed to encompass the responsibility for child support.
"`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'
"IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). The term `parental rights' ordinarily refers to
"`[a] parent's rights to make all decisions concerning his or her child, including the right to determine the child's care and custody, the right to educate and discipline the child, and the right to control the child's earnings and property.'
"Black's Law Dictionary 1146 (8th ed.2004). A `right' is `something to which one has a just claim: as ... the power or privilege to which one is justly entitled.' Merriam-Webster's Collegiate Dictionary 1073 (11th ed.2003). Legally speaking, a `responsibility' is a `liability.' Black's Law Dictionary 1338 (8th ed.2004). Even in the more ordinary usage, `responsibility' refers to a burden for which one is accountable. See Merriam-Webster's Collegiate Dictionary 1062 (11th ed.2003). A `parental responsibility,' therefore, would be a burden or liability one owes due to his or her status as a parent. Hence, even without reference to § 12-15-1, the CPA authorizes a juvenile court to terminate those parental rights that Alabama law recognizes for the inability or unwillingness of the parent to properly discharge his or her legal duties to the child.
"Alabama law has long recognized that a parent has a natural legal right to the custody, companionship, care, and rearing of his or her child but that the parent also has a legal obligation to support, care, and train the child. Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939); P.Y.W. v. G.U.W., 858 So.2d 265, 267 (Ala.Civ.App.2003). Alabama law holds that it is the child who *1123 possesses the inherent and fundamental right to support from the parent. Abel v. Abel, 824 So.2d 767, 768 (Ala.Civ.App. 2001). A custodial parent has no right to child support but merely receives support on behalf of the child whose right it is. State ex rel. Dep't of Human Res. v. Sullivan, 701 So.2d 16 (Ala.Civ.App. 1997). On the other hand, Alabama law impresses upon parents a legal duty to support their minor children. Ex parte McCall, 596 So.2d 4 (Ala.1992); Miller v. Miller, 866 So.2d 1150, 1157-58 (Ala. Civ.App.2003); and Davis v. Gyllenhaal-Davis, 516 So.2d 665 (Ala.Civ.App. 1987). A parent may be held civilly or criminally liable for a failure to discharge the responsibility to support his or her child. See Ex parte University of South Alabama, 541 So.2d 535 (Ala. 1989); Ala.Code 1975, § 13A-13-4.
"As a matter of plain English, the CPA, in authorizing a juvenile court to `terminate the parental rights' of a parent, does not empower a juvenile court to terminate child support. Had the legislature intended that a termination of `parental rights' would also include a termination of `parental responsibilities,' such as the responsibility to support the parent's children, it could have used language apt to that purpose. For example, the Alabama Adoption Code, Ala. Code 1975, § 26-10A-1 et seq., provides that a parent who consents to the adoption of his or her child forfeits `all rights and obligations,' Ala.Code 1975, § 26-10A-11(a)(6) (emphasis added), and that `[u]pon a final decree of adoption, the natural parents of the adoptee, except for a natural parent who is the spouse of the adopting parent are relieved of all parental responsibility for the adoptee and will have no parental rights over the adoptee.' Ala.Code 1975, § 26-10A-29(b) (emphasis added). It appears that the legislature deliberately worded § 26-18-7 to authorize only a termination of parental rights, not parental responsibilities. `"The judiciary will not add that which the Legislature chose to omit."' State v. Dean, 940 So.2d 1077, 1080 (Ala.Crim.App.2006)(quoting Ex parte Jackson, 614 So.2d 405, 407 (Ala. 1993)). The only way to give the plain language of the CPA its intended effect is to hold that a termination of parental rights does not automatically terminate the parent's child-support obligation.
"Although I find no ambiguity in § 26-18-7, if the language of a statute is ambiguous the court is bound to construe the statute to give effect to the legislative purpose behind its enactment. IMED Corp., 602 So.2d at 346. The purpose of the CPA is
"`to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents.'
"Ala.Code 1975, § 26-18-2 [repealed effective January 1, 2009]. Section 26-18-7 provides a means of terminating parental rights when a child's welfare is threatened by continuation of those rights. Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987), overruled on other grounds by Ex parte Beasley, 564 So.2d 950 (Ala.1990). `"Paramount in a determination regarding the termination of parental rights is a consideration of the child's best interest."' J.C. v. State Dep't of Human Res., 986 So.2d 1172, 1193 (Ala.Civ.App.2007) (quoting T.S. v. J.P., 674 So.2d 535, 537 (Ala.Civ.App. 1995)) (emphasis omitted).
"In interpreting § 26-18-7 so that a judgment involuntarily terminating parental rights automatically discharges a *1124 parent from liability for future child support, the majority undermines the purpose of the statute in at least two ways. First, in many cases it will force responsible parents to choose between filing a petition to terminate the parental rights of an abusive and neglectful coparent to protect their children or to forgo filing such a petition in order to preserve the children's right to support. Second, in many cases, including this one, the majority's interpretation will require children to depend on state aid that may be far less remunerative than the child support to which they would otherwise be entitled.
"On the other hand, by interpreting § 26-18-7 according to its plain language, the court would assure the fullest possible relief for the child. A judgment terminating parental rights immediately and permanently severs the parent's right to custody, control, and affiliation with the child. See In re Grayson, 419 So.2d 234, 237 (Ala.Civ.App.1982) (Bradley, J., concurring specially). The judgment protects the child from the potential for future harm flowing from the affected parent by forever preventing the parent from asserting any parental rights. However, the child will continue to be entitled to at least one beneficial aspect of that relationship if the parental obligation for support remains undisturbed. Responsible parents would not have to fear jeopardizing their children's right to support by filing meritorious petitions for termination of parental rights. Irresponsible parents would realize that they cannot escape liability for child support by abusing or neglecting their children. In addition, dependent children would not have to rely entirely on the state for subsistence."
M.D.C. v. K.D., 39 So.3d at 1112 (Moore, J., dissenting).
In his dissent, Judge Moore went on to address several contentions raised in the main opinion of the Court of Civil Appeals. The majority of the Court of Civil Appeals, relying on a Kansas case,[3] stated that one of the purposes of the CPA is to promote stability and permanency and that to accomplish that goal, the prior parental relationship must be totally severed. We agree with Judge Moore that holding that the duty to pay child support survives a termination of parental rights does not impede the goal of stability and permanency. Section 26-10A-29 (b), Ala.Code 1975, provides that the duty to provide child support is extinguished by an adoption, with adoption being one option for providing stability and permanency. The termination of parental rights protects the child from any abuse or neglect arising out of the parental relationship, but terminating the duty to pay child support does not protect the child from any such abuse or neglect. Eliminating the benefit of child support after a termination of parental rights does nothing to protect the child from any harm emanating from the prior parental relationship; instead, it denies the child benefits based on the child's needs and the parent's ability to pay. If the child is adopted or emancipated, then the child-support obligation ceases. Additionally, the child-support obligation ceases upon the child's reaching majority or the paying parent's death.
Judge Moore addressed the majority's reading of § 26-18-7, which raised a jurisdictional question:
"The majority's reading of § 26-18-7 also violates established law that once a circuit court enters a child-support order in a divorce proceeding, the circuit court retains exclusive jurisdiction to modify *1125 that order, which precludes a juvenile court from adjudicating child-support issues in a termination-of-parental-rights action. See A.S. v. W.T.J., 984 So.2d 1196, 1202 (Ala.Civ.App.2007). In this case, the trial court entered a child-support order as part of a divorce judgment in February 2003, requiring the father to pay $540 per month for the benefit of his children. If the majority is correct, the juvenile court terminated that child-support obligation in October 2005, although it lacked jurisdiction to do so. Rather than bestow upon juvenile courts jurisdiction that this court has heretofore not recognized, we should hold that the trial court had exclusive continuing jurisdiction over its own child-support order and that the judgment terminating parental rights could not have possibly affected the father's obligation as established in that order.7
"7 A circuit court that has entered a judgment containing a child-support order may modify that order based on a material change of circumstances affecting the best interests of the child. See, e.g., Campbell v. Tolbert, 656 So.2d 828 (Ala.Civ.App.1994). Although not necessary to resolve the precise issue before the court, I note that the trial court would have had jurisdiction to consider any petition filed by the father to terminate his child-support obligation after his parental rights had been terminated. Although I believe that the mere termination of parental rights is insufficient to prove a material change of circumstances and that it would rarely be in the best interest of the child to terminate child support, it is possible that under some circumstances a circuit court could conclude that terminating child support would prevent exposing the child further to the parental conduct, condition, or circumstances underlying the judgment terminating parental rights. Regardless of the merits of the petition, only the circuit court that entered the divorce judgment would have jurisdiction to make that determination."
M.D.C. v. K.D., 39 So.3d at 1113 (Moore, J., dissenting).
Judge Moore also addressed the majority's reliance upon previous caselaw in which appellate courts indicated that a parent was no longer obligated to pay child support after that parent's rights were terminated. We agree with his interpretation of those cases. Judge Moore stated:
"In Ex parte Brooks, [513 So.2d 614 (Ala.1987)], the supreme court held that a father could not voluntarily agree to a termination of his parental rights for the sole purpose of avoiding his child-support obligation. In the opinion, the court assumed that a judgment terminating parental rights would end the father's obligation to pay child support. 513 So.2d at 617. The Brooks court did not cite any legal authority for that proposition. It also utterly failed to consider whether a judgment may terminate parental rights without affecting parental responsibilities, such as the duty to support the child. At any rate, the Brooks court did not actually decide that the judgment had the effect of terminating child support, which renders its discussion pure dicta. All the other cases cited by the majority either rely directly on Brooks, see C.M. v. D.P., 849 So.2d 963, 965-66 (Ala.Civ.App.2002), State ex rel. McDaniel v. Miller, 659 So.2d 640, 642 (Ala.Civ.App.1995), J.C. v. State Dep't of Human Res., 986 So.2d at 1202-03, or, like Brooks, on no legal authority at all. See Ex parte University of South Alabama, 541 So.2d [535] at 538 [(Ala.1989)]. Alabama law actually holds that the only events that impliedly terminate child support are the child's *1126 reaching the age of majority, see State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995), the emancipation of the child, see Anderson v. Loper, 689 So.2d 118, 120 (Ala.Civ.App.1996) (citing B.A. v. State Dep't of Human Res. ex rel. R.A., 640 So.2d 961, 962 (Ala.Civ.App.1994)), the adoption of the child, see Ala.Code 1975, § 26-10A-29(b), and the death of the child or the obligor-parent, see Pittman v. Pittman, 419 So.2d 1376, 1380 (Ala.1982)."
M.D.C. v. K.D., 39 So.3d at 1113-14 (Moore, J., dissenting) (footnotes omitted).
Judge Moore also addressed the reliance of the majority of the Court of Civil Appeals in its main opinion upon cases from other jurisdictions that have addressed the issue whether the termination of parental rights also terminates the duty to pay child support. In that regard, Judge Moore stated:
"It is true that the vast majority of other states have construed their termination-of-parental-rights statutes so as to encompass termination of child support.10 However, most other state statutes explicitly state that a termination of parental rights completely severs the parent-child relationship, see, e.g., 10 Okla. Stat. tit. 1981, § 1132 (cited in McCabe v. McCabe, 78 P.3d 956, 958 (Okla.2003)), Fla. Stat. 63.062(1)(b) (quoted in Ponton v. Tabares, 711 So.2d 125, 126 (Fla.Dist.Ct.App.1998)), and Miss.Code Ann. § 93-15-103(2) (quoted in Beasnett v. Arledge, 934 So.2d 345, 347 (Miss.Ct.App.2006)), or terminates the rights and responsibilities of the parent to the child,11 see Cal. Family Code § 7803 (quoted in County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 1124, 106 Cal.Rptr.2d 461, 462 (2001)). In other states the term `parental rights' has been construed to mean `parental rights and responsibilities' based on a passage from Anguis v. Superior Court in and for Maricopa County, 6 Ariz. App. 68, 429 P.2d 702 (1967),12 in which the court stated:
"`We are faced here with the limited question of whether or not the Juvenile Court may conduct a hearing and sever the parental rights of a parent to a child without there first being a pending adoption. Before we consider this matter we must consider the meaning of the term "parental rights". The rights of a parent regarding its child are quite often confused with parental obligations or the rights of the child to care, custody, support, inheritance and other obligations from the parent to the child. Our statute A.R.S. § 14-206, for example, provides that every child is entitled to support and education from its natural parents. As used herein we construe the term "parental rights" in the broader term as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and parental obligations.'
"6 Ariz.App. at 71, 429 P.2d at 705. Notably, that passage is totally devoid of any use of the rules of statutory construction or any other legal reasoning. It appears that the court simply decided without any basis that the term `parental rights' as used in Arizona's termination-of-parental-rights statute means `both parental rights and parental obligations.' I find that `analysis' to be totally unpersuasive.13
"On the other hand, in State of Rhode Island v. Fritz, 801 A.2d 679 (R.I.2002), the court held that a termination of parental rights does not terminate the parent's *1127 responsibility to pay child support by operation of law. The court said:
"`Although some courts, absent a specific statutory provision or statutory ambiguity, have held that termination of parental rights ends financial obligations as well, it is our opinion that under current Rhode Island statutes, parental financial support continues until a child has been emancipated, adopted, reaches the age of majority, or until the obligation has been duly terminated after the Family Court has held a hearing and issued an order stating its findings.
"`In some jurisdictions, the term "parental rights" has been interpreted as incorporating all the rights of the parental relationship, including not only those rights that flow to the parent, but also those, such as the right to financial support, that flow to the child. See, e.g., County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 106 Cal.Rptr.2d 461, 464 (2001) (citing State Welfare Division, Department of Human Resources v. Vine, 99 Nev. 278, 662 P.2d 295, 298 (1983)). The plain language of Rhode Island's termination of parental rights statute, § 15-7-7, addresses only the "legal rights of the parent to the child" and not the reciprocal rights of the child with respect to the parent. Because this Court consistently has declined "`[to] interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without the implication,'" Wehr, Inc. v. Truex, 700 A.2d 1085, 1088 (R.I.1997) (per curiam) (quoting State v. Feng, 421 A.2d 1258, 1264 (R.I.1980)), we interpret the General Assembly's silence as an indication that it did not intend that § 15-7-7 terminate the right of the child to support by the parents.'
"801 A.2d at 685.
"The majority relies on the principle from Coffey v. Vasquez, 290 S.C. [348] at 350, 350 S.E.2d at 397-98 [(Ct.App. 1986)], that the duty of support is `"correlative to the parent's rights in and to the child."' 39 So.3d at 1108. However, that statement is not consistent with Alabama law, which provides that a parent remains obligated to pay child support even when the parent has no custodial rights and the children refuse visitation, McWhorter v. McWhorter, 705 So.2d 423 (Ala.Civ.App.1997), or even when the noncustodial parent has no contact with the child. See Kernop v. Taylor, 628 So.2d 707 (Ala.Civ.App. 1993).14 Our law is more consistent with that of West Virginia, which holds that `the duty to pay child support and the right to exercise visitation are not interdependent.' Carter v. Carter, 198 W.Va. 171, 177, 479 S.E.2d 681, 687 (1996). Accordingly, the West Virginia Supreme Court has held that the mere fact that all parental rights, including the right to visitation, have been terminated does not impact the parent's duty to support the child. In re Stephen Tyler R., 213 W.Va. 725, 742, 584 S.E.2d 581, 598 (2003).
"10 In at least one state in which the courts construed their statute to end a parent's child-support obligation upon a judgment terminating parental rights, the legislature amended the statute to provide for the continuation of such support. See 10 Okla. Stat. tit. 2001, § 7006-1.3(B)(3) (amended by 1995 Okla. Sess. Laws, ch. 352, §§ 67 and 199, effective July 1, 1995) (`Child support orders shall be entered by the court that terminates parental rights and shall remain in effect until the court of termination receives notice from the placing *1128 agency that a final decree of adoption has been entered and then issues an order terminating child support and dismissing the case.'). See also Tex. Fam. Code Ann. § 154.001(a-l) (amended by 2005 Tex. Sess. Law Serv., ch. 268, § 1.08(a), effective September 1, 2005) (requiring financially able parent whose rights have been terminated to continue making child-support payments until child is adopted).
"11 In Gabriel v. Gabriel, 519 N.W.2d 293 (N.D.1994), the court actually found that the duty to pay child support ended after the father's parental rights had been terminated and the child had been adopted by the mother's new husband because the North Dakota Adoption Code provided that adoption `"[r]elieve[s] the natural parents of the adopted individual of all parental rights and responsibilities, and ... terminate[s] all legal relationships between the adopted individual and his relatives, including his natural parents. . . ."' 519 N.W.2d at 295 (quoting N.D. Cent.Code § 14-15-14(1)(a)). The identical language used in Ohio Rev.Code Ann. § 3107.15(A)(1) convinced the court in In re Scheehle, 134 Ohio App.3d 167, 169, 730 N.E.2d 472, 474 (1999), that an interlocutory adoption order absolved the natural father of the duty to pay child support.
"12 Anguis is quoted or cited in McCabe v. McCabe, supra; County of Ventura v. Gonzales, supra; Kansas ex rel. Sec'y of Soc. & Rehab. Servs. v. Clear, [248 Kan. 109, 804 P.2d 961 (1991)]; Nevada v. Vine, 99 Nev. 278, 662 P.2d 295 (1983); Coffey v. Vasquez, 290 S.C. 348, 350 S.E.2d 396 (Ct.App. 1986); and Commonwealth ex rel. Spotsylvania County Dep't of Soc. Servs. v. Fletcher, 38 Va.App. 107, 562 S.E.2d 327 (2002), aff'd, 266 Va. 1, 581 S.E.2d 213 (2003).
"13 `I find similarly unpersuasive the holding in Kauffman v. Truett, 771 A.2d 36, 39 (Pa.Super.Ct.2001), that a termination of parental rights also extinguishes the parent's child-support obligation. In Truett, the court relied exclusively on Monroe County Children & Youth Services v. Werkheiser, 409 Pa.Super. 508, 512, 598 A.2d 313, 315 (1991), in which the parties agreed `that termination of parental rights absolves the parent of her duty to pay support. . . .' Obviously, if the parties stipulated as to that issue, the Werkheiser court never decided for itself whether a termination of parental rights does, in fact, terminate the parent's obligation to support the child, and the Truett court erroneously failed to independently investigate that issue.
"14 Based on our consistent precedents, I do not agree with the statement `that the parental obligation of support is in tandem with the benefits of a parent-child relationship.' 39 So.3d at 1109. That statement should not be construed as relieving noncustodial parents of their obligation to pay child support despite their loss of access to the child or the loss of any other benefits of the parent-child relationship."
39 So.3d at 1116 (Moore, J., dissenting).
A parent has a fundamental liberty interest in the care, custody, and management of his or her child. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, this interest is not absolute; it "is limited by the compelling government interest in the protection of childrenparticularly where the children need to be protected from their own parents." Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir.1997). The state has a parens patriae interest in the welfare of the child. Santosky, 455 *1129 U.S. at 766, 102 S.Ct. 1388. In protecting children from parental abuse and neglect, every state has a statutory means for involuntarily terminating a parent's rights, and those statutes vary. The plain language of the CPA addresses only the termination of a parent's responsibilities to and for his or her child. § 26-18-7.
Justice Murdock's dissent relies on Ex parte Brooks, 513 So.2d 614 (Ala.1987), overruled on other grounds by Ex parte Beasley, 564 So.2d 950 (Ala.1990), in which the divorced parents of a child asked the trial court to terminate the father's parental rights. The mother wanted to terminate the father's rights because he had shown no interest in the child and because he lacked stability, was ill-tempered, and disagreed with the child's being raised in the Jewish faith. The father generally agreed with the mother and stated that he had no interest in visiting the child. The trial court denied the petition. The Court of Civil Appeals concluded that the termination of the father's parental rights was appropriate because the father had abandoned the child. The guardian ad litem sought review in this Court. The guardian ad litem, in seeking to protect the child's best interest, including his right to receive financial support, assumed that a termination of parental rights also terminated the duty to pay child support. This Court did the same, stating, without citing to any authority: "The Child Protection Act of 1984, as we have noted, was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child through the termination of parental rights." 513 So.2d at 617. Brooks and its progeny continue to rely on this unsupported assumption.[4]
Justice Murdock's dissent, in relying on this Court's assumption in Brooks, sets out a well settled principle of statutory construction that the legislature is presumed to be aware of judicial construction relevant to legislation it has enacted when it adopts a subsequent statute on the same subject and that it is further presumed that the legislature did not intend to make any alterations in the law beyond what it explicitly declared. In other words, because the legislature amended the CPA after this Court issued its opinion in Brooks, we should presume that the legislature intended that a termination of parental rights would also terminate the obligation to pay child support. Although this principle of statutory construction is important, it should not be a ratification by the legislature of its intent in the present case when this Court did not interpret the statute or address the issue but merely made an assumption that a termination of parental rights automatically extinguished the duty of the parent whose rights are being terminated to pay child support. Certainly, this presumption can be overcome by the clear and express language in the statute. After all, the goal of statutory construction is to determine the intent of the legislature, and that is best done by the words of the statute.
Justice Murdock in his dissent writes that rights and obligations generally go hand in hand, including parental rights and the parental obligation to pay child support. Alabama has never held (nor would it be in the best interest of the child to do so) that a fit parent should be prevented from visitation with his or her child simply because the parent is unable to pay child support. As Judge Moore noted in his dissent, a parent remains obligated to *1130 pay child support even when the parent has no custodial rights and the child refuses visitation or when the noncustodial parent has no contact with the child. A further example that a parent's rights are not and cannot be tethered to a parent's obligation is found in the Alabama Adoption Code, in which a father can be found to have abandoned his child in utero when the "father, with reasonable knowledge of the pregnancy, [fails] to offer financial and/or emotional support for a period of six months prior to the birth." § 26-10A-9, Ala.Code 1975.
A parent has a common-law duty to support his or her child. See Atkins v. Curtis, 259 Ala. 311, 315, 66 So.2d 455, 458 (1953)("A man is under a common law duty to support his wife and child."). The Alabama Legislature has enacted statutes imposing a duty of support on a noncustodial parent in a divorce proceeding or on a parent pursuant to a paternity proceeding. The common-law duty to support one's child remains after the termination of parental rights. We note that as a practical matter, even Brooks recognized that it is harmful to a child to be denied the benefit of financial support. Judge Moore in his dissent made the valid point that terminating child support may require children to depend on state aid that may be far less remunerative than child support. 39 So.3d at 1112. The Massachusetts Supreme Court has aptly stated: "[T]axpayers [should be] secondary to parents in meeting the financial needs of dependent children." In re Adoption of Marlene, 443 Mass. 494, 501, 822 N.E.2d 714, 719 (Mass. 2005).
Although the majority of other jurisdictions have addressed whether a termination of parental rights automatically terminates the obligation to pay child support, those statutes vary from state to state. As Judge Moore noted, most other state statutes explicitly provide that a termination of parental rights completely severs the parent-child relationship, or they terminate both the rights and responsibilities of the parent to the child. 39 So.3d at 1114-15. The plain language of Alabama's statute simply does not do so. Judge Moore also pointed out that courts of other states had relied on an unsupported conclusion from the Arizona appellate court in concluding that the term "parental rights" means "both parental rights and obligations." 39 So.3d at 1115.
Judge Moore quoted from State of Rhode Island v. Fritz, 801 A.2d 679 (R.I. 2002), as a case from one state that has held that a termination of a parent's parental rights does not bring the continuing child-support obligation to an end by operation of law. We add that the West Virginia Supreme Court has held that the parent's obligation to pay child support was not automatically extinguished by a termination of parental rights. In re Stephen Tyler R., 213 W.Va. 725, 584 S.E.2d 581 (2003). The West Virginia termination statute provided that the court may "`terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent.'" 213 W. Va. at 736, 584 S.E.2d at 592 (quoting W. Va.Code § 49-6-5(a)(6) (Supp.2003)). That court held "[t]he plain language of this statute affords the circuit court the options of either terminating the abusing parent's parental rights, terminating his/her responsibilities, or terminating both the parent's parental rights and responsibilities." 213 W.Va. at 740, 584 S.E.2d at 596. In response to the terminated father's argument that to continue his child-support obligation was "patently unfair when he no longer has the right to visit or otherwise have contact with his son," the court explained that "`child support payments are exclusively *1131 for the benefit and economic best interest of the child,'" and that "`the duty to pay child support and the right to exercise visitation are not interdependent.'" 213 W. Va. at 743, 584 S.E.2d at 598 (quoting Carter v. Carter, 198 W.Va. 171, 479 S.E.2d 681, 686-87 (1996)). See also Evink v. Evink, 214 Mich.App. 172, 174, 542 N.W.2d 328, 330 (1995) (holding that father was obligated to pay child support even though he had voluntarily terminated his parental rights because "absent adoption, the obligation to support a child remains with the natural parents").
Justice Murdock's dissent questions whether an unintended consequence of the opinion this Court releases today could be the creation of "additional delay in adoption proceedings," resulting from a possible increase in termination proceedings. 39 So.3d at 1144. It is arguable that the exact opposite will occur, for two reasons. First, we note that in order to terminate a parent's rights, clear and convincing evidence must be presented. Santosky, 455 U.S. at 769, 102 S.Ct. 1388.
"The two-prong test that a court must apply in parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to a termination of parental rights have been considered. (As earlier discussed, if a nonparent, including the State, is the petitioner, then such a petitioner must meet the further threshold proof of dependency.)"
Ex parte Beasley, 564 So.2d 950, 954 (Ala. 1990). With regard to frivolous claims that may be filed, our juvenile courts, as they do with all cases, are certainly capable of determining whether a petition to terminate parental rights lacks merit. Also, the Alabama Rules of Civil Procedure provide several methods for disposing of merit less claims. Additionally, we note that there are provisions that give priority to appeals of termination proceedings. See § 12-15-323, effective January 1, 2009. ("Appeals relating to dependency and termination of parental rights cases should take priority over other cases filed on appeal except for emergency matters....") Second, the Alabama Adoption Code provides for a transfer of the duty and obligation of support by interlocutory order in almost all adoption proceedings from the time a petitioner has received an adoptee into his or her home and a petition for adoption has been filed. § 26-10A-18, Ala.Code 1975. This provision of the Adoption Code delegates custody (unless custody is retained by the Department of Human Resources or a licensed child-placing agency that held custody at the time of placement) as well as "(2) the responsibility for the care, maintenance, and support of the adoptee, including any necessary medical or surgical treatment, pending further order of the Court." Thereafter, as Judge Moore correctly noted, § 26-10A-29, Ala.Code 1975, provides that upon a final judgment of adoption being entered, the parental responsibility for the adoptee is extinguished. 39 So.3d at 1112-13. Therefore, the "deadbeat" parents referred to by Justice Murdock in his dissent, armed with knowledge that a termination of their parental rights would not abrogate their duty of support, might be inclined more quickly to consent to an adoption where relief may be provided to terminate their support obligation.
Justice Smith, joined by Chief Justice Cobb, agrees that § 26-18-7 can only be interpreted to provide that the termination of parental rights does not automatically *1132 terminate a parent's obligation to pay child support. Justice Smith, joined by Chief Justice Cobb, notes in her special writing that it would have been prudent to have input from other entities by way of additional briefing, in particular the Department of Human Resources ("DHR"), as to what actions DHR will take "for those children in its custody who have not yet been adopted but as to whom parental rights have been terminated." 39 So.3d at 1133. In other words, Justice Smith and Chief Justice Cobb are in agreement with the interpretation of § 26-18-7 in this opinion and appear to be seeking input as to what DHR's response will be, as it is "now faced with deciding the appropriate course of action" based on this Court's interpretation of the relevant statutory language. 39 So.3d at 1133. Although DHR, as the usual party seeking to terminate an unfit parent's rights, will undoubtedly have to make a determination as to how to proceed under this Court's interpretation of § 26-18-7, that issue is not before us in this case, nor would DHR's input as to what it might do if this Court interpreted § 26-18-7 so as to terminate only parental rights have been instructive. We note that Justice Smith and Chief Justice Cobb are not seeking DHR's assistance as a friend of the Court in interpreting § 26-18-7. As with Justice Murdock's discussion of scenarios that might arise based on our interpretation of § 26-18-7, we must leave those questions for another day (if indeed those scenarios proposed by Justice Murdock arise).

Conclusion
In summary, involuntarily terminating a parent's rights to his or her child does not, by operation of law, extinguish the parent's responsibility to pay child support for the benefit of that child as established by a prior judgment. The CPA, which governs the termination of parental rights, does not address the termination of child support. Reading the CPA in conjunction with the AJJA,[5] if a juvenile court finds clear and convincing evidence indicating that a parent is unable or unwilling to discharge his or her parental responsibilities, the juvenile court may on that basis terminate the rights of the parent to the child but not the parent's responsibility to provide child support.[6] Additionally, the plain language of the CPA refers to "parental rights" and should not be construed to encompass the responsibility for child support. Had the legislature intended that a termination of parental rights would also terminate parental responsibilities, such as the responsibility to support the child, the legislature could have easily used such language. A judgment terminating a parent's rights immediately and permanently severs the parent's rights to custody, control, and affiliation with the child. The judgment forever prevents the parent from asserting any parental rights over the child and, *1133 thus, protects the child from future harm flowing from the parent whose rights have been terminated. Nothing in the CPA prevents the child from being entitled to at least the beneficial aspect of the obligation for support arising out of the parent-child relationship. With the goal of promoting stability and permanency, there is nothing in Alabama law preventing a child from entering the adoption process merely because its natural parent, whose parental rights have been terminated, remains under court order to pay child support and the subsequent adoption will terminate the child-support obligation by law. To hold otherwise would reward the most egregious cases of parental abuse and neglect by that parent's not having the burden of paying child support.
Accordingly, we reverse and remand.
REVERSED AND REMANDED.
SHAW, J., concurs.
COBB, C.J., and STUART and SMITH, JJ., concur specially.
PARKER, J., concurs in the result.
LYONS, WOODALL, and MURDOCK, JJ., dissent.
STUART, Justice (concurring specially).
Like Justice Smith, for the 12 years I served as a juvenile judge and family-court judge, I operated under the assumption that the termination of parental rights automatically terminated the parent's obligation to pay child support. That issue has been placed squarely before the Court in this case. I agree with the main opinion that the plain language of the relevant statutes indicates that only parental rights and not parental responsibilities are automatically terminated. I cannot read them any other way. I urge the legislature, as the proper policy-making branch of government with regard to this issue to clarify its intent in this matter.
SMITH, Justice (concurring specially).
As the main opinion notes, until today this Court had not decided the precise question at issue in this case. For the 25 years I served as a juvenile judge, I operated under the assumption that the termination of a parent's rights automatically terminated the parent's obligation to pay child support. However, the main opinion, which I believe correctly construes the relevant statutes, plainly dispels that assumption.
Nonetheless, I think it would have been prudent for the Court to have invited the Department of Human Resources ("DHR") and perhaps other entities to provide additional briefing as amici curiae. DHR in particular, which is now faced with deciding the appropriate course of action for those children in its custody who have not yet been adopted but as to whom parental rights have been terminated, may seek legislative recourse.
COBB, C.J., concurs.
MURDOCK, Justice (dissenting).
The law of Alabama has always understood a termination of parental rights to be a termination of the parental relationship, or the parental status. In this regard, Alabama law has been, and is, no different than the law of other jurisdictions, particularly where a statute does not specifically state otherwise. "[T]he great majority of jurisdictions ... agree that judicial termination of parental rights severs the parent-child relationship to the extent that the parent no longer owes a duty to support the child." State Dep't of Human Servs. ex rel. Overstreet v. Overstreet, 78 P.3d 951, 954 (Okla.2003) (citing in support cases from 19 other states including Erwin v. Luna, 443 So.2d 1242, 1244 (Ala.Civ. *1134 App.1983)).[7]See, e.g., Santosky v. Kramer, 455 U.S. 745, 760 n. 11, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("For a child, the consequences of termination of his natural parents' rights may well be far-reaching. In Colorado, for example, it has been noted: `The child loses the right of support and maintenance, for which he may thereafter be dependent upon society; the right to inherit; and all other rights inherent in the legal parent-child relationship, not just for [a limited] period . . ., but forever.' In re K.S., 33 Colo.App. 72, 76, 515 P.2d 130, 133 (1973)."); see also 59 Am.Jur.2d Parent and Child § 16 (__) ("An order terminating the parental rights of a parent terminates all his rights and obligations with respect to the child and of the child to him arising from the parental relationship." (emphasis added)); 3 Donald T. Kramer, Legal Rights of Children § 28.02 (2d ed. 1994) ("Termination of a parent's parental rights . . . completely and finally severs the parent-child relationship." (emphasis added)). This understanding, which I believe long and widely held by the bench and bar of this State, is consistent with pertinent statutes and existing precedent.

I. Statutes and Precedent
The reasoning employed by Judge Moore in his dissenting opinion below, and adopted in the main opinion of this Court, is based upon a comparison and juxtaposition of the terms "parental rights" and "parental responsibilities" in Ala.Code 1975, § 26-18-7, and the term "residual parental rights and responsibilities" in Ala. Code 1975, § 12-15-1(24).[8] Such reasoning, as to statutes with essentially identical language, was rejected in Virginia v. Fletcher, 38 Va.App. 107, 110, 562 S.E.2d 327, 328 (2002), on the ground that, by their express terms, such statutes simply "do not address the issue before us." I believe the same is true of those terms as used in our statutes.
On a fundamental level, rights and obligations go hand in hand. See, e.g., State v. Dyer, 98 N.H. 59, 62, 94 A.2d 718, 720 (1953)(stating, in the context of a criminal proceeding, "[t]he notion that one has rights without corresponding duties would destroy our scheme of ordered liberty under law, since real freedom and responsibility must go hand in hand. To separate them is to destroy both."); see also, e.g., Usdin v. State Dep't of Envtl. Prot., 173 N.J.Super. 311, 329, 414 A.2d 280, 289 (1980)(environmental-law dispute) ("Perhaps it is trite, but nevertheless true: rights and responsibilities must go hand in hand."). So far as termination-of-parental-rights proceedings are concerned, parental rights and obligations are no different.[9] *1135 E.g., Ex parte Brooks, 513 So.2d 614, 617 (1987) ("We hold that the judgment of the District Court of Jefferson County was correct in concluding that David Carlton Stephenson's best interestsparticularly his right to receive support from his fatherwould not be protected by termination of the father's parental rights."), overruled on other grounds, Ex parte Beasley, 564 So.2d 950 (Ala.1990); Beasnett v. Arledge, 934 So.2d 345, 348 (Miss. Ct.App.2006) ("[I]t is an inherent aspect of voluntary termination of parental rights that, just as the entire parent-child relationship terminates, so too does the responsibility to pay child support, so long as the best interests of the child are preserved."); Coffey v. Vasquez, 290 S.C. 348, 350, 350 S.E.2d 396, 398 (1986)("[A] parent's obligation to feed, clothe and otherwise support a child, being correlative to the parent's rights in and to the child, does not exist where the parent's reciprocal rights in and to the child have been terminated."); Virginia v. Fletcher, 38 Va.App. 107, 112, 562 S.E.2d 327, 329 (2002) (describing a parent whose parental rights have been terminated as a "legal stranger" to the child who has no obligation to pay child support). Thus, absent some specific legislative statement to the contrary, the main opinion's reliance on the use of the phrase "termination of parental rights" as being noninclusive of parental "obligations," is misplaced. As noted, Alabama statutes contain no specific statement to the contrary.[10]
This is not to say that the Alabama Legislature has not made any statement regarding this matter. The provisions of the Alabama Uniform Parentage Act that were in effect at all times pertinent to the present case provide that "[a]s used in this chapter, the term `parent and child relationship' shall mean the legal relationship existing between a child and his natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations." Ala.Code 1975, § 26-17-2 (superseded, effective January 1, 2009, by Ala.Code 1975, § 26-17-101 et seq.). The recent amendments and commentary to the Alabama Uniform Parentage Act, Ala.Code 1975, § 26-17-101 et seq., are even more enlightening: "Unless parental rights are terminated, a parent-child *1136 relationship established under this chapter applies for all purposes, except as otherwise specifically provided by other law of this state." Ala.Code 1975, § 26-17-203 (emphasis added). As the commentary to § 26-17-203 states:
"This section may seem to state the obvious, but both the statement and the qualifier are necessary because without this explanation a literal reading of §§ 201-203 [of the Uniform Parentage Act (2002)] could lead to erroneous statutory constructions. The basic purpose of the section is to make clear that a mother, as defined in § 201(a), is not a parent once her parental rights have been terminated. Similarly, a man whose paternity has been established by acknowledgment or by court adjudication may subsequently have his parental rights terminated."
(Emphasis added.)[11]
As the main opinion notes, statutes regarding the same subject matter are to be construed in pari materia. Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 988 (Ala. 1999); see also United States v. Freeman, 44 U.S. 556, (3 How.) 556, 11 L.Ed. 724 (1845) ("If it can be gathered from a subsequent statute in pari materia what meaning the legislature attached to the words of the former statute, this will amount to a legislative declaration of its meaning and will govern the construction of the first statute."). Section 26-18-7(a) should be read in pari materia with § 26-17-203.
Until the holding of the main opinion in the present case, Alabama appellate courts have consistently stated that the "termination of parental rights" entails the termination of the parental relationship, including parental obligations such as child support. As this Court stated in Ex parte Brooks, a child's "right to receive support from his fatherwould not be protected by termination of the father's parental rights." 513 So.2d at 617. See also, e.g., State Dep't of Human Res. v. I.P., 874 So.2d 1121, 1122 n. 1 (Ala.Civ.App.2003)(citing Brooks in support of the statement that "[a]lthough DHR presented ample evidence from which the trial court could have concluded that grounds for the termination of the parents' parental rights existed, see § 26-18-7(a), Ala.Code 1975, the trial court might have concluded, given the unlikelihood of M.P.'s being adopted and the lack of any evidence of a permanent and stable custodial placement, that DHR had not shown it was in M.P.'s best interest to terminate the parents' parental rights, at least not at the present time"); C.M. v. D.P., 849 So.2d 963, 966 (Ala.Civ.App.2002) ("[A]s in Brooks, it is not in the child's best interests to be alienated from any future right to financial support, parental affiliation, and inheritance." (emphasis added)); In re Beasley, 564 So.2d 959, 960 (Ala.Civ. App.1990) (stating, on remand from the Supreme Court, "Even if the father chooses not to establish contact with his son, the child's right to receive support from his father remains. See, Brooks. Clearly, the child's future right to support, including a possible college education (see Ex parte *1137 Bayliss, 550 So.2d 986 (Ala.1989)), and the child's rights of inheritance would not be protected if the father's parental rights were terminated." (emphasis added)); Ex parte University of South Alabama, 541 So.2d 535, 538 (Ala.1989) ("A child has this fundamental right to financial support until its majority or a legal termination of parental rights."); McDaniel v. Miller, 659 So.2d 640, 642 (Ala.Civ.App.1995) (citing both Beasley and Brooks, and holding that "[t]he child's right to current and future support, including, possibly, payment of a college education, and the child's right of inheritance from the father, were apparently never considered, and the child's rights certainly were not protected" when the trial court terminated the father's parental rights). The nature and repetition of the statements of our courts over the past 30 years to the effect that a termination of parental rights carries with it the termination of other aspects of the parent-child relationship such as the obligation to pay child support and inheritance is such that it cannot be easily dismissed as mere "assumption" as suggested by the main opinion.
Furthermore, when the legislature adopted the CPA in 1984, the phrase "termination of parental rights" already had been recognized judicially as including the termination of child-support obligations. In Erwin v. Luna, 443 So.2d 1242 (Ala.Civ. App.1983), the father had entered into an agreement with his former wife in which he consented to the adoption of his child and she attempted to waive his obligation to pay child support. Thereafter, the wife did not proceed with the adoption, and an action was instituted seeking child support from the father. The court first noted that the child's right to receive support could not be waived, even if the waiver was adopted in the court's decree. The court then stated: "Only if appellant's parental rights had been terminated, either by adoption or otherwise, would appellant's support obligations have ceased." Id. at 1244 (emphasis added). See also Roe v. Conn, 417 F.Supp. 769, 779 (M.D.Ala.1976) (describing the termination of parental rights under Alabama law as "sever[ing] entirely the parent-child relationship).[12]
Perhaps more importantly, this Court must take into account that under Erwin the phrase "termination of parental rights" had a preexisting legal meaning that presumably was known to the legislature when it enacted the CPA in 1984. See City of Pinson v. Utilities Bd. of Oneonta, 986 So.2d 367, 373 (Ala.2007) ("`The Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute,' Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala.1998), and `we presume "that the legislature does not intend to make any alteration in the law beyond what it explicitly declares."' Ware v. Timmons, 954 So.2d 545, 556 (Ala.2006)(quoting Duncan v. Rudulph, 245 Ala. 175, 176, 16 So.2d 313, 314 *1138 (1944))."). Thus, contrary to the main opinion's assumption that the legislature intended for the CPA to provide for the termination of parental rights but not the concurrent termination of parental obligations, we must actually presume the opposite.
Further still, as noted above, Ex parte Brooks, In re Beasley, and the other cases relying on Ex parte Brooks, reflect clear pronouncements from our courts that, so far as they were concerned, the phrase "termination of parental rights" as it was used in the CPA was intended to include the termination of a parent's obligation to pay child support. The main opinion posits that the language at issue in the aforementioned opinions is dicta, which I will hereinafter address, and that the legislature actually intended the opposite. The latter position cannot withstand scrutiny.
The legislature has thrice amended the CPA since the decision in Ex parte Brooks, yet it has not chosen to correct the alleged error of construction posited by the main opinion. As noted above, "[t]he Legislature, when it enacts legislation, is presumed to have knowledge of existing law and of the judicial construction of existing statutes." Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003).
"The proper aim of judicial interpretation is to determine the intention of the legislature. We believe it is pertinent to point out that there exists, and has long existed, in this state, a principle that when the legislature readopts a code section, or incorporates it into a subsequent Code, prior decisions of this court permeate the statute, and it is presumed that the legislature deliberately adopted the statute with knowledge of this court's interpretation thereof."
Edgehill Corp. v. Hutchens, 282 Ala. 492, 495-96, 213 So.2d 225, 227-28 (1968); see also Ex parte HealthSouth Corp., 851 So.2d 33, 41-42 (Ala.2002) ("Presumably, when the Legislature reenacts or amends a statute without altering language that has been judicially interpreted, it adopts a particular judicial construction."). Thus, regardless of whether Ex parte Brooks and its progeny reflect what the legislature originally intended, this Court must presume that the legislature has now acquiesced in the construction reflected in those decisions.

II. Ex parte Brooks

The divorced parents in In re Stephenson, 513 So.2d 612 (Ala.Civ.App.1986),
"jointly filed a petition to terminate the parental rights of the father as to David, their two and one-half year old only child. Therein, the father affirmatively stated his desire to surrender any and all of his parental rights and stated that he believed that such action would be in the best interests of the minor child.
"A report to the Department of Pensions and Security was a portion of the evidence in this case. This report concluded that it was in David's best interests that the father's parental rights be terminated. There was nothing adverse in the report as to the mother. . . . David appeared to be well adjusted and happy living with his mother.
". . . .
"The parties were divorced at a time when the mother was about three months pregnant with David. The divorce was largely precipitated when the father attempted to persuade the mother to have an abortion and she refused to do so. The judgment of divorce made no custody award.
"When David was born the father did not visit him in the hospital. As a matter of fact, both parents explicitly testified that the father has never attempted to see David, that he has never visited *1139 with David, that he has never even seen David, that he has never paid any child support or provided any money for the child's benefit since his birth, and that, while the mother has requested support from the father on many occasions, he has consistently refused to support David. The father did provide $100 towards the mother's hospital stay.
"The father is twenty-eight years of age. He has been a deputy sheriff for three years. His salary is $741 every two weeks. He owns no real estate but has an equity in his vehicle and has a moderate bank account.
"The mother stated that she wants to terminate the father's parental rights because he has no interest in David, is not stable, is not child oriented, is short of patience, and has a bad temper. The parents disagree over the child's religious upbringing as a Jew. The mother is very concerned over bickering about custody and visitation and the effect it might have upon David, who is presently well adjusted.
"The father testified that he desires that his rights as to the child be terminated since the parents disagree upon a number of areas, such as religion, and that it would not be right to emotionally harm David over the father. In that regard, the father swore that it was better for the mother to raise the child and that he has no desire to visit with or to know David. When asked if he would try to visit David in the future, his reply was, `Who knows what is in the future?'
"In denying the petition to terminate parental rights, the trial court found that it was not in David's best interests to terminate his father's parental rights, there being no evidence of any harm to the child by the father. The trial court further found that David's future rights to support, inheritance, and paternal affiliation would not be protected by a termination in this matter. The mother appealed. The guardian ad litem who was appointed to represent David's interests supports the final judgment of the trial court."
513 So.2d at 612-13 (emphasis added).
On appeal, the Court of Civil Appeals noted that the CPA created a rebuttable presumption that the father had abandoned David, and the court concluded that the presumption
"was not rebutted by an iota of testimony. Even without the benefit of that presumption, the undisputed evidence was that the father has never acted or attempted to act as David's father in any respect. Two and one-half years of the father's failure to act, neglect, and behavior as if David did not exist certainly constitutes ample time and clear reasons to terminate his parental rights as to this young child.
"In short, we are clearly convinced after a very thorough study of the undisputed evidence that it is in David's best interests that the father's parental rights as to David be terminated. The learned trial court abused its judicial discretion in not doing so."
513 So.2d at 614 (emphasis added).
On appeal to this Court, the guardian ad litem argued, in part, "that termination of the father's parental rights in this case is: (1) contrary to the intent of the Alabama Child Protection Act when no adoption is contemplated; (2) contrary to public policy; [and] (3) impermissible when a less drastic remedy would better serve the child's interests. . . ." Ex parte Brooks, 513 So.2d at 616. In addressing these argument, this Court stated:
"The purpose of the 1984 Child Protection Act is stated in § 26-18-2, which provides, in part:

*1140 "`It is the purpose of this chapter to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents.'
"The trial court concluded that termination of [the father's] parental rights would not serve David's best interest. We agree.
"[The mother] asks for termination of her former husband's parental rights in order to avoid the possibility of future disagreements or a custody conflict with him concerning David. [The father] has shown absolutely no interest in his son and would escape any obligation to support David if his parental rights were terminated. As appellant has ably argued, the 1984 Child Protection Act was not intended as a means for a parent to avoid his obligation to support his child. Were we to concur with the Court of Civil Appeals in this instance, we would satisfy the objectives of the parents at the child's expense.
"... Termination of the father's parental rights in this case would seem to us to be an unnecessarily drastic action not supported by clear and convincing evidence. Although we agree that [the father's] conduct toward his son may satisfy the criteria set forth in Ala.Code (1975), §§ 26-18-3 and 26-18-7(c), as constituting `abandonment,' termination of his parental rights appears to be overwhelmingly for the convenience of the parents. By mutual consent, [the parents] seek to waive David's right to receive support from his father although the child would receive nothing in return.

". . . .
"Even if [the father] chooses not to establish contact with his son, David's right to receive support from his father remains. The Child Protection Act of 1984, as we have noted, was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child through the termination of parental rights. The courts of this State will not be used in the furtherance of such a purpose.

"In the absence of clear and convincing evidence that termination of [the father's] parental rights is the appropriate remedy, we cannot agree with the Court of Civil Appeals that the trial court erred in denying the [parents'] petition. We hold that the judgment of the District Court of Jefferson County was correct in concluding that David Carlton Stephenson's best interests particularly his right to receive support from his fatherwould not be protected by termination of the father's parental rights. The judgment of the Court of Civil Appeals is, therefore, reversed, and a judgment is rendered denying the termination of parental rights."
513 So.2d at 616-17 (emphasis added).[13]
According to the main opinion, the stated basis for our holding in Ex parte *1141 Brooks, including our holding "that the judgment of the District Court of Jefferson County was correct in concluding that David Carlton Stephenson's best interestsparticularly his right to receive support from his fatherwould not be protected by termination of the father's parental rights," was dicta. Given the arguments made to this Court in Ex parte Brooks, this Court's response to those arguments, and this Court's articulation of what "we hold," I disagree. The statement concerning the potential termination of support from the father was central to the issue presented and to this Court's disposition of that issue.
Further, even if the above-described language from Ex parte Brooks were dicta, I could not agree that it should be lightly disregarded (1) because the matter at issue was raised on appeal and addressed by this Court, see Stark v. Watson, 359 P.2d 191, 196 (Okla.1961) ("`Obiter dictum is an expression of opinion by the court or judge on a collateral question not directly involved, or mere argument or illustration originating with him, while judicial dictum is an expression of opinion on a question directly involved, argued by counsel, and deliberately passed on by the court, though not necessary to a decision. While neither is binding as a decision, judicial dictum is entitled to much greater weight than the other, and should not be lightly disregarded.'" (quoting Crescent Ring Co. v. Travelers' Indem. Co., 102 N.J.L. 85, 132 A. 106, 107 (1926))), and (2) because I am convinced that the rationale of Ex parte Brooks reflects a proper understanding of the CPA.
In addition, assuming the above-described language from Ex parte Brooks is dicta, I do not believe this Court could reasonably have expected the legislature to make the fine distinction between what is dicta and what is not when it enacted the CPA and thereafter amended the CPA three times, particularly since Alabama courts, including this Court, and the bar itself often struggle with what is and what is not dicta in a given case. Certainly the decisions that have relied on Ex parte Brooks over the last 20 years do not lend themselves easily to the conclusion that such decisions are dicta or easily discernible as such. For example, in Ex parte Beasley, 564 So.2d 950 (Ala.1990), this Court overruled that portion of Ex parte Brooks that had required a showing of dependency in the context of a termination-of-parental-rights proceeding involving only the parents as contestants. We also, however, appear to have endorsed the holding from Ex parte Brooks at issue *1142 in the present case by stating that "[t]he merits of the mother's petition must be tested against the public policy that requires clear and convincing evidence `that termination of [a father's] parental rights [was] the appropriate remedy.' Brooks, 513 So.2d at 617." 564 So.2d at 955. Certainly that appears to be what the Court of Civil Appeals concluded because on remand that court stated:
"The guardian contends that the trial court erred in terminating the father's parental rights in the child in that there were less drastic alternatives than termination available. We agree.
"`Our courts are entrusted with the responsibility of determining the best interest of children who come before them. When a child's welfare is threatened by continuation of parental rights, the law provides a means for terminating those rights.' Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987). However, the 1984 Child Protection Act was not intended as a means for a parent to avoid his obligation of support. See Brooks, supra. `Convenience of the parents is not a sufficient basis for terminating parental rights.' Brooks, supra, at 617.
"Here, there was no evidence produced at trial and no argument has been made that Byron (father) has physically harmed or has in any way interfered with the mother's custody of the child. Rather, the evidence simply shows a father whose visits with his child have been sporadic. Even if the father chooses not to establish contact with his son, the child's right to receive support from his father remains. See, Brooks. Clearly, the child's future right to support, including a possible college education (see Ex parte Bayliss, 550 So.2d 986 (Ala.1989)), and the child's rights of inheritance would not be protected if the father's parental rights were terminated.
"Therefore, termination of the father's parental rights in this case would seem to us to be an unnecessarily drastic action not supported by clear and convincing evidence."
In re Beasley, 564 So.2d 959, 960 (Ala.Civ. App.1990).

III. Adoption Issues
The main opinion also purports to find support for its position in the Alabama Adoption Code, including Ala.Code 1975, § 26-10A-29(b), which states: "Upon the final decree of adoption, the natural parents of the adoptee, except for a natural parent who is the spouse of the adopting parent are relieved of all parental responsibility for the adoptee and will have no parental rights over the adoptee."
A similar line of argument was addressed and correctly rejected in County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 106 Cal.Rptr.2d 461 (2001).
"Finally, the County relies on [Cal.] Family Code section 8617, which states, `[t]he birth parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the adopted child, and have no right over the child.' It argues that under this section, a parent must pay support until the child is adopted. Section 8617 is a general statute applicable to all adoptions of unmarried minors, not merely those that follow a termination of parental rights. The declaration that adoption ends a birth parent's obligations in all cases does not resolve whether a termination order itself ends a parent's duty to provide support."
88 Cal.App.4th at 1125, 106 Cal.Rptr.2d at 465.
Like the adoption code at issue in Gonzales, the Alabama Adoption Code applies to several types of adoption situations, *1143 only a portion of which involve termination proceedings. Under the Alabama Adoption Code, adoptions can be either voluntary on the part of the parents (i.e., consensual adoptions) or involuntary, such as where the termination of parental rights is required. In part, the latter category can be further broken down into (1) those cases in which termination of parental rights has already occurred and thus no consent to adoption is required, see Ala. Code 1975, § 26-10A-10(1); (2) those cases in which no formal termination of parental rights is required because consent to the adoption is irrevocably implied, see Ala.Code 1975, § 26-10A-10(1); and (3) those cases in which a termination of parental rights must be obtained before the adoption may proceed, see Ala.Code 1975, § 26-10A-3 ("If any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights.").
Like the Gonzales court, I cannot conclude that provisions such as § 26-10A-29(b) reflect a legislative intent to "resolve whether a termination order itself ends a parent's duty to provide support." 88 Cal. App.4th at 1125, 106 Cal.Rptr.2d at 465.

IV. Unintended Consequences
In addition to the foregoing, I am concerned that the holding of the main opinion will result in unintended consequences that have heretofore not been an issue because of our courts' and our legislature's understanding of the state of the law as discussed above. For example:
A. The decision of the main opinion is not limited temporally, and thus appears to be applicable retroactively. Should we not expect a substantial increase in child-support-arrearage filings in light of the newfound rights established by the main opinion?
B. If the position of the main opinion is correct, i.e., that the termination of parental rights does not terminate parental obligations or the child's "rights" vis-a-vis the parent, what other parental obligations and/or children's "rights" remain in place after termination? What about the child's right to associate with the parent? May a child now sue to establish his right to associate with his parent even if a final judgment terminating parental rights was entered years earlier? What about the parent's obligation to provide for the proper education of the child, including post-secondary education, and who is to decide what proper education entails? What about the parent's obligation to provide for the health-care needs of the child and who is decide what that entails? What about the parent's obligation to provide social, moral, and religious guidance for the child, and how is that to be addressed? On what principled ground are we to conclude that such obligations, or a child's right of inheritance, do not likewise continue beyond the termination of a parent's parental rights?
C. The position of the main opinion reduces a risk that has heretofore been understood as being part of the balancing of risks and benefits relating to the issue of termination of parental rights (i.e., the loss of support from the other parent), and therefore will likely increase the use of termination proceedings by parents against one another. It might also increase the incentive for DHR to seek to terminate parental rights even in the absence of a reasonably foreseeable adoptive placement.[14]
*1144 D. The position of the main opinion could increase contested termination proceedings and create additional delay in adoption proceedings. For example, some "deadbeat" parents who would otherwise not be inclined to fight the termination of their parental rights because the termination would also eliminate their child-support obligation, will now fight termination of their parental rights.[15]
The foregoing list is not exhaustive. It demonstrates, however, that the position adopted by the main opinion will entail a fundamental change of course that has not been anticipated by our courts or by the legislature and that may have unknown consequences in both termination proceedings and adoption proceedings. Under the circumstances, I submit that if such a change of course is to be had, the legislature is the deliberative body that should balance the various interests at issue and make the determination of how best to proceed, rather than this Court. See Berdeaux v. City Nat'l Bank of Birmingham, 424 So.2d 594, 595 (Ala.1982). Compare Tex. Fam.Code Ann. § 154.001(a-1) (explicitly providing that a parent continues to have certain obligations toward his or her child after that parent's parental rights are terminated.).

V. Conclusion
The law of Alabama allows for the termination of parental rights either when a parent is "unwilling" adequately to parent his child or when a parent is "unable" adequately to parent his child. The Alabama statute addressing the grounds for the termination of parental rights states that a court "may terminate the parental rights of the parents" where
"the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future."
Ala.Code 1975, § 26-18-7(a) (now amended and renumbered as § 12-15-319).
The main opinion states that, to hold other than it does, "would reward the most egregious cases of parental abuse and neglect by that parent's not having the burden of paying child support." 39 So.3d at 1133. Nothing in my position or in what I consider to have been the law of Alabama until today is or has been motivated by any desire to accommodate parents of the nature described. Rather, our law, as I and others have always understood it, derives from the fundamental correlation between rights and responsibilities and a corresponding understanding, sound in my view, of what our decisions and the legislature have always intended by providing for the termination of "parental rights." Also, to *1145 the extent the main opinion focuses on such parents, I believe it looks past the variety of circumstances that can lead to the termination of parental rights, including, for example, mental incompetence or physical disability that "render [the parent] unable to properly care for the child... [for] the foreseeable future." See, also, supra note 14. Even for parents who through no fault of their own have suffered the heart-wrenching loss of their parental rights, the main opinion's position will add the burden of supporting the child without any right to the child's association.
Bad facts make bad law. This is a case with bad facts. The father is not a sympathetic figure. I am concerned, however, that we not discard a legal principle that is so fundamental and so well accepted, a principle that is more palatable in those cases where the parent is simply "unable" rather than "unwilling," and the abandonment of which holds the potential for both jurisprudential and practical consequences that are unintended and unforeseen.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] Effective January 1, 2009, the CPA and the former Alabama Juvenile Justice Act were consolidated by the enactment of a new Alabama Juvenile Justice Act, codified at § 12-15-101 et seq., Ala.Code 1975. See Act No. 2008-277, Ala. Acts 2009. The provisions of the CPA and the former Alabama Juvenile Justice Act have been revised and reorganized and some have been repealed by the new Alabama Juvenile Justice Act.
[2] Effective January 1, 2009, the provisions of Chapter 15 were amended and renumbered. As amended, they are now found at § 12-15-101 et seq.
[3] Kansas ex rel. Sec'y of Soc. & Rehab. Servs. v. Clear, 248 Kan. 109, 804 P.2d 961 (1991).
[4] Regardless of whether the Court's assumption in Brooks is obiter dicta or judicial dicta, the Brooks Court simply did not address whether the termination of parental rights automatically terminated the duty to pay child support.
[5] As noted earlier, the legislature merged the CPA and the AJJA, effective January 1, 2009. Act No. 2008-277, Ala. Acts 2008.
[6] The juvenile court has exclusive original jurisdiction over the termination of parental rights. § 12-15-30(b)(6) (now § 12-14-114(c)(2) as amended), Ala.Code 1975; H.M.J. v. S.L.A., 964 So.2d 1245 (Ala.Civ.App.2007). Consistent with their respective jurisdiction, both a juvenile court and a circuit court may enter an award of child support. For example, if child support was originally awarded in a divorce proceeding, then a parent whose rights were subsequently terminated would have the ability to file a petition to terminate child support in the circuit court divorcing the parties. If the juvenile court originally ordered child support in a paternity proceeding, then the juvenile court would have jurisdiction to determine whether child support should be terminated and could do so in conjunction with a subsequent petition and hearing to terminate parental rights.
[7] In Overstreet, the statute at issue specifically provided that the termination of parental rights "shall not terminate the duty of either parent to support his or her minor child" until such time as the child is adopted. 78 P.3d at 952 n. 1. (quoting Okla. Stat. tit. 10, § 7006-1.3). Alabama's statutes have no language resembling the specific provisions of the statute discussed in Overstreet.
[8] The Child Protection Act, § 26-18-1 et seq., Ala.Code 1975, and the Alabama Juvenile Justice Act, § 12-15-1 et seq., Ala.Code 1975, have been combined, revised, and reorganized, effective January 1, 2009. The new Alabama Juvenile Justice Act is codified at § 12-15-101 et seq. See Act No. 2008-277, Ala. Acts 2008.
[9] I must concede that I have had some difficulty in grasping the logic of the main opinion's position, particularly when articulated in other contexts. Does the law conceive that a court can terminate a partner's rights as to a partnership, but that the former partner will continue to have the status of a partner and the ongoing obligations of a partner? That a court can terminate a person's rights as an employee, but that the former employee will continue to have the status of an employee and the ongoing obligations of an employee? That a court can terminate a trustee's rights to act as trustee, but that the former trustee will continue to have the status of trustee and the ongoing obligations of a trustee?
[10] The main opinion states that "Alabama has never held . . . that a fit parent should be prevented from visitation with his or her child simply because the parent is unable to pay child support." 39 So.3d at 1129. I submit this example is inapt. The posited scenario does not comprehend a lack of duty to pay child support, only a lack of ability.

Likewise inapposite is the main opinion's reliance upon the fact that "a parent remains obligated to pay child support even when the parent has no custodial rights and the child refuses visitation or when the noncustodial parent has no contact with the child." 39 So.3d at 1127. In these situations, all parental rights are not terminated, and the law's recognition of the parent-child relationship remains intact.
I further note that there is nothing in the above examples that would prevent the parent from remedying his or her fault and regaining the opportunity to exercise his or her parental rights. The issue before this Court, however, is whether the permanent severance of all parental rights terminates the parent-child relationship and thus permanently terminates all parental obligations. I contend that it does. The alternative is a duty-filled, but right-free "parent" who can never regain his or her rights. Thus, the mother whose parental rights are terminated because of a drug problem, and who subsequently overcomes that problem and proves to be a model citizen and parent, must continue to pay child support (and perhaps, in the absence of any principled reason otherwise, continue to have "parental responsibilities" relating to inheritances or other matters), though she can never regain any right to associate with her child.
[11] The commentary continues:

"The qualifier, `as otherwise provided by other law of this State,' is necessary because other statutes may restrict rights of a parent. For example, UPC (1993) § 2-114(c) precludes a parent of a child (and the parent's family) from inheriting from the child by intestate succession `unless that natural parent has openly treated the child as his [or hers] and has not refused to support the child.'"
The obligation to pay child support is neither a parental right, as discussed in the commentary, nor is its continuance "specifically provided" in the CPA.
[12] This principle also is reflected in the precedent of other courts of the era. See, e.g., In re K.S., 33 Colo.App. 72, 76 515 P.2d 130, 132-33 (1973) ("[T]ermination of parental rights, so called, severs permanently, not only the rights and obligations of the parent relative to the child, but those of the child as well. The child loses the right of support and maintenance, for which he may thereafter be dependent upon society; the right to inherit; and all other rights inherent in the legal parent-child relationship, not just for the period during which he is subject to the code, but forever."); Roelfs v. Sam P. Wallingford, Inc., 207 Kan. 804, 811, 486 P.2d 1371, 1376 (1971) (termination of parental rights is intended as "a final and permanent settlement of all problems of custody and supervision by a complete and final divestment of all legal rights, privileges, duties, and obligations of the parent and child with respect to each other").
[13] I further note that it is not always necessary to terminate parental rights in order to effectively remove a child from bad custody circumstances. Especially where a meaningful parent-child bond has formed, our courts sometimes have overlooked the alternative of leaving a child in a permanent custody arrangement with a relative or other custodian (typically one who has already established a custodial relationship with the child in which the child will be raised day-to-day in a nurturing and loving environment), while retaining some residual relationship with the parent. Such a residual relationship may allow for occasional supervised or other visitation, child support, and/or inheritance rights, that may have pecuniary or even psychological benefits that, when weighed in the balance, cause it to be in the best interest of the child. See, e.g., Ex parte Beasley, 564 So.2d at 954-55 (noting that "[o]nce the court has complied with this two-prong testthat is, once it has determined that the petitioner has met the statutory burden of proof and that, having considered and rejected other alternatives, a termination of parental rights is in the best interest of the childit can order the termination of parental rights"); D.M.P. v. State Dep't of Human Resources, 871 So.2d 77, 95 n. 17 and accompanying text (Ala.Civ.App. 2003) (plurality opinion discussing Ex parte Beasley and other cases); State Dep't of Human Res. v. A.K., 851 So.2d 1, 18 (Ala.Civ. App.2002) (Murdock, J., dissenting); D.C. v. J.C., 842 So.2d 17, 20 (Ala.Civ.App.2002) (reversing a termination of parental rights on the ground "that a viable alternative to terminating parental rights exists in this case which is to maintain the present situationmaintain custody with the paternal grandparents and maintain the supervised visitation. . . . [T]he record does not indicate that the parents pose any physical or emotional harm to the child."); W.L.H. v. B.L.M., 829 So.2d 173, 175-76 (Ala.Civ.App.2002) (Murdock, J., concurring in the result, joined by two other judges).
[14] We should not lose sight of the fact that the termination of parental rights is the most Draconian of measures taken by the civil law, resulting in a complete and permanent severance of the most precious of all human relationships. There are those cases that come before the appellate courts of this State in which the record suggests that an effort to terminate has occurred because of animosity or spite, out of convenience, or simply to accommodate a new spouse who wishes to adopt a child. Even in cases initiated by DHR, my experience is that the call can be close and the judgment difficult. Although these cases may represent a minority of all termination proceedings, I believe this Court should be far more reluctant than it appears to be today to remove a dynamic that, at least in some cases, may be serving as a needed tempering influence on such petitioners.
[15] The main opinion states that I am arguing that there might be additional delay in adoption proceedings "resulting from a possible increase in termination proceedings." 39 So.3d at 1131. My point, however, is that termination proceedings will now more likely be contested by parents who heretofore were "filtered" out of the system by their willingness to forgo a relationship with their children in order to avoid a child-support payment.