[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1152 
 On Application for Rehearing
The opinion of this court issued on May 9, 2003, is withdrawn, and the following is substituted therefor.
Sandra C. Miller ("the wife") appeals from the trial court's judgment divorcing her from Mason S. Miller ("the husband"). She challenges the provision of the judgment pertaining to the property division, and she further claims that the trial court erred to reversal in failing to award her periodic alimony, an attorney fee, and child support for her 18-year-old son, who the trial court ruled to be emancipated. The parties had been married for 19 years, and 2 children, a daughter and a son, were born of the marriage. At the time of trial, the husband was 41 years old and the wife was 40 years old. The daughter and the son were 14 and 18 years old, respectively. Both the husband and the wife have completed one year of college; both parties had worked during the marriage. The husband worked as a mechanical designer for Boeing Company during most of the time the parties were married; he was laid off from Boeing in May 2001. At the time of trial, the husband was working for State Engineering Company. In 2000, the husband earned $45,548. The wife had worked for Champion Paper Company as a secretary during most of the marriage. She left that company for a six-month period in 1989 to sing with a band in a nightclub; thereafter, she returned to full-time work at Champion Paper. In 1997, the wife left Champion Paper and began working as an executive secretary for Hexel Company; in 1999, the wife left Hexel to take a secretarial position at Boeing. The wife earned approximately $25,000 per year at Boeing.
In 1999, the wife developed a condition called "ankylosing spondylitis." This progressive disease affected the wife's spine, neck, and fingers. The wife's rheumatologist recommended that she continue to work because he recommended an active lifestyle for patients who suffered from this disease. However the wife missed a great deal of time from work because of the effects of the disease; as a result, she was laid off from Boeing in March 2000. She has not returned to work. The wife also suffers from irritable bowel syndrome and from depression. After she was laid off, the wife received short-term disability benefits from Boeing for six months. She then received short-term Social Security disability benefits that were scheduled to end in February 2003. The wife testified that she suffers from constant pain, whether sitting, standing, or lying down; that she is unable to take pain relievers because they irritate her stomach; and that her weight had decreased from 107 pounds to 98 pounds. She also stated that her secretarial position at Boeing had involved typing at a computer all day and had *Page 1153 
exacerbated the pain in her neck and back. The wife further testified that, as her disease had progressed and her symptoms had worsened, the husband had increasingly assisted with the housework.
On June 5, 2001, the husband separated from the wife, after admitting his extramarital involvement with a coworker. Thereafter, he filed for divorce. The wife answered, filing a counterclaim for alimony, child support, and postminority support for their son, who was attending college. During the pendency of the divorce proceedings, the husband paid the wife approximately $1,600 per month, paid her monthly car payment of $422, and paid her $75 monthly telephone bill.
At trial, the court heard testimony from the parties, their son, and the wife's father. The husband testified that he had a 401(k) retirement account with a balance of $67,321, and that he had a Boeing Financial Security account with a $5,510 balance,[1] and a savings account with a balance of $10,000. The husband stated that he was vested at Boeing and that he would receive a pension of $290 per month from Boeing beginning in 2015. The wife testified that she maintained a savings account at Redstone Federal Credit Union with a balance of $3040.43, that she had a Boeing 401(k) retirement account with a $902 balance, and that she had a second 401(k) retirement account with a balance of $14,720; she also stated that she was vested at Champion and would receive a pension from Champion.[2]
In its judgment, the trial court awarded custody of the 14-year-old daughter to the wife and awarded visitation to the husband. It directed the husband to pay monthly child support for the daughter in the amount of $465, pursuant to Rule 32, Ala.R.Jud.Admin. The trial court ruled that the 18-year-old son was emancipated, based on the son's testimony that he had completed high school, that he was currently attending college, and that he earned $6.75 per hour at a Chick-Fil-A fast-food restaurant and was working 30-35 hours per week. The trial court awarded the husband the right to claim both children as exemptions on his income-tax return. The trial court provided that the wife and the daughter were to reside in the marital home until the daughter reached the age of 19, at which time the house was to be sold, unless the wife elected to sell the marital home before that time. The trial court directed the husband to make the monthly mortgage payments on the marital home and authorized him to claim the income-tax deductions for the mortgage interest. The trial court further directed the parties to divide equally the sale proceeds from the future sale of the marital home. The trial court awarded both parties their own vehicles and ordered them to be responsible for the indebtedness on those vehicles.[3] The trial court awarded the wife her 401(k) account in the amount of $14,720 and also awarded *Page 1154 
her $25,000 from the husband's 401(k) account. In addition the wife was awarded her Boeing 401(k) account in the amount of $902, her savings account in the amount of $3,040, her Champion Paper pension fund, and $2,500 from the husband's savings account. The husband was awarded the remaining balance of his 401(k) account in the amount of $42,321, the remaining balance of $7,500 in his savings account, $1,000 in United States savings bonds, and his Boeing Financial Security Fund with a balance of $5,510. Each of the parties was instructed to pay one-half of the daughter's noncovered medical expenses and to retain their joint savings account with a balance of $8,800 to defray future expenses of the daughter's college education.
The wife filed a timely postjudgment motion in which she challenged the court's failure to award her periodic alimony and its failure to award child support for the 18-year-old son. She further challenged the property-division provisions of the judgment and argued that the trial court should have ordered the husband to be responsible for all the daughter's noncovered medical expenses. She finally argued that the husband should not have been allowed to claim the children as dependents on his income-tax return, that the husband should be responsible for the remaining indebtedness on her vehicle, and that she should have been awarded an attorney fee. The trial court amended its judgment to clarify its ruling that the 18-year-old son was emancipated, and it further entered a provision reserving the issue of periodic alimony for future consideration upon a showing of changed circumstances; it denied all other relief the wife requested. The wife timely appealed.
On appeal, the wife raises some of the same issues she raised in her postjudgment motion to the trial court. Initially, we address the wife's claim that the trial court abused its discretion in dividing the marital estate and in failing to award her periodic alimony. Appellate courts apply the following standard when reviewing a trial court's judgment pertaining to property division and the award of periodic alimony:
 "A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App. 1993). Moreover, issues of alimony and property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id."
Morgan v. Morgan, 686 So.2d 308, 310 (Ala.Civ.App. 1996).
This court has also held that a trial court's judgment on matters of alimony and property division is presumed correct and will not be disturbed unless it is so unsupported by the evidence so as to be unjust and palpably wrong. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App. 1989). This court must consider the issues of property division and alimony together when reviewing the decision of the trial court,Albertson v. Albertson, 678 So.2d 118, 120 (Ala.Civ.App. 1996), and, because the facts and circumstances of each case vary, this court must also consider the particular facts and circumstances giving rise to the divorce judgment presented for review. Murphy v. Murphy, 624 So.2d 620,623 (Ala.Civ.App. 1993). In dividing marital property and awarding alimony, the trial court should consider the following factors: (1) the earning abilities of the parties; (2) the parties' employment prospects; (3) the parties' ages, health, and station in life; (4) the duration of the marriage; and (5) the conduct of the parties *Page 1155 
with reference to the cause of divorce. Mahaffey v. Mahaffey,806 So.2d 1286, 1288 (Ala.Civ.App. 2001).
The wife claims that the husband's infidelity was the source of the failure of their marriage and that, therefore, she should be entitled to a larger portion of the marital assets than the trial court awarded her in its judgment. See, e.g., Myrick v. Myrick, 714 So.2d 311
(Ala.Civ.App. 1998). The evidence pertaining to the source of the marital discord is disputed — the husband contends that the wife told him in 1999 that she no longer loved him, prompting him to begin sleeping on the couch. The trial court has the duty of resolving the conflicts in evidence before it. Butler v. Coonrod, 671 So.2d 750, 751 (Ala.Civ.App. 1995). After thoroughly reviewing the pertinent evidence, we conclude that the trial court's division of the marital assets was fair and equitable. The trial court awarded the wife a portion of the husband's retirement account because her retirement accounts contained a much lower combined balance. After the court-ordered sum of $25,000 is subtracted from the balance of the husband's 401(k) account and added to the combined balance of the wife's 401(k) accounts, the parties' interests in the 401(k) accounts are roughly equivalent. Taking into account the presumption in favor of the trial court in matters of property division, we cannot say the trial court abused its discretion in dividing the marital assets of the parties.
The wife further claims that, because she is disabled and because of the disparity between the parties' incomes, caused, in part, by her disability, the husband should have been ordered to pay her periodic alimony. At the time of trial, the wife was receiving monthly short-term disability benefits in the amount of $1,224, and the daughter was receiving monthly Social Security benefits on the basis of the wife's disability in the amount of $628. The wife testified that those benefits would cease as of February 2003 and that she would be reevaluated for disability status at that time. However, she also testified that she had retained an attorney to pursue the recovery of long-term disability benefits for her; therefore, presumably once the wife ceases to receive short-term-disability benefits, her condition will either have improved and she will be able to seek employment or, in the alternative, her condition will have deteriorated or remained unchanged and she will be approved to receive long-term Social Security disability benefits.
The income the wife has available to her for the payment of household expenses includes monthly disability income of $1,852,[4] and a portion of the minor daughter's child support of $465. The trial court directed the husband to pay the $708 mortgage payment on the marital home until the home is sold, thus relieving the wife of this obligation. The wife was directed to pay her insurance premium of $238 per month and her car payment of $468 per month. The evidence indicates that the wife's telephone bill is generally $75 a month and that she pays approximately $150 a month for her utilities. Those amounts total $931. In comments made in open court, the trial court stated that it recognized that the wife's budget was tight, but it suggested that she consider remedying the problem by trading down to a more economical vehicle, stating "[t]he car payment would be hers. If she can't handle that one she needs to see about trading the cars, trading down. Probably doesn't make either one of you happy but *Page 1156 
that's the best I can do and under the circumstances I think that's as fair as I can make it."
The husband earned a monthly gross income of $3,900. He proved monthly expenses of $250 in rent, $100 in utilities, $150 in gasoline, $55 for automobile insurance, $28 for his work uniform, $30 for storage fees, $62 in telephone charges, $708 for the mortgage payment on the marital home, $465 in child support, $240 for the children's insurance, and $450 for groceries and food. Those amounts total $2,538. After taxes, unemployment, and Social Security deductions are calculated, very little of the husband's monthly $3,900 gross income remains. Although the wife testified that she is disabled and unable to work, at the time of trial she had not been approved for permanent disability benefits and she had presented no medical records in support of her contention. The trial court did not expressly categorize its order directing the husband to make the mortgage payment on the marital home as periodic alimony.[5] However, the result of that order — the wife's ability to live in the marital home free of mortgage payments — certainly eases her financial burden.
Reviewing the property settlement together with the husband's obligation to make the mortgage payments on the marital home, we cannot say the trial court abused its discretion in failing to make an express award of periodic alimony to the wife.
The wife also contends that the trial court erred in failing to award her an attorney fee. The decision whether to award an attorney fee is within the sound discretion of the trial court. Bush v. Bush, 784 So.2d 299
(Ala.Civ.App. 2000). "Factors to be considered by the trial court in awarding [legal] fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney." Figures v. Figures, 624 So.2d 188,191 (Ala.Civ.App. 1993). The evidence indicates that, at trial, the wife owed her attorney $2,290. The trial court made the following comments:
 "I specifically denied the attorney's fees but, you know, y'all aren't dummies. I awarded her $2,500 out of the [husband's] Redstone Federal Credit Union [savings account] to do with what she pleased. I assume she would pay her lawyer out of that. But as far as ordering him to pay the attorney's fees specifically I'm not. I don't think — I hate putting that in the order to be honest with you. Mr. Miller is like most men, he don't mind paying anything but he hates to pay the other person's lawyer."
In light of the broad discretion afforded the trial court in determining whether to order an award of an attorney fee, we do not view the trial court's failure to make a specific attorney-fee award as plain and palpable error.
Finally, the wife contends that the trial court erred in ruling that the son was emancipated. Emancipation of a minor child is governed by statute; it can occur only when a minor child has reached the age of 18. Ala. Code 1975, § 26-13-1. A trial court's judgment emancipating a child must be based on the best interest of the minor child; the best-interest standard affords a trial court freedom to consider a *Page 1157 
variety of circumstances and factors. Anderson v. Loper, 689 So.2d 118
(Ala.Civ.App. 1996). A number of factors are proper for consideration when the trial court is determining what is in the best interest of the child; however, there are no specific guidelines that are applied in all cases. Id.
The trial court ordered in its January 29, 2002, judgment:
 "As the evidence established that the parties' son, . . . age 18, is employed, and is working 30 to 35 hours per week, and due to the fact that the [husband] is now contributing to his son's college expenses, and he will continue to do so, the Court finds that [the husband] should no longer be required to pay child support to the [wife] for the support of their son."[6]
In a later paragraph in that same judgment, the trial court provided the following:
 "The [husband] shall pay all reasonable and necessary expenses in order to provide the parties' son, . . . now age 18, with a college education at a state supported college or university in the State of Alabama, which are not covered by any scholarships awarded to the child, in order for the child to obtain a four (4) year undergraduate degree. In order for the [husband] to be obligated to provide his son with a college education, the child must attend college on a full-time basis (summers excepted), maintain passing grades, and complete his education within five (5) years from the date he was graduated from high school."
The evidence indicates that the son attained the age of majority on September 10, 2002, almost four months after the entry of the amended judgment on May 16, 2002. The evidence further indicates that the son has graduated from high school and has been attending the University of Alabama in Huntsville on scholarship, taking approximately 14 credit hours per semester. The son lives with the mother and does not contribute to payment for groceries or utilities. The son is employed at a Chick-Fil-A fast-food restaurant as an assistant manager, working 30-35 hours per week at a salary of $6.75 per hour or approximately $200 per week. The son pays his personal cellular-telephone bill and also pays his automobile insurance premiums, but he does not buy his own clothes. The husband has paid for the son's vehicle and gives the son $20 per week for gasoline. The husband is currently contributing approximately $400 per semester to the son's college education; scholarships earned by the son have covered the remainder of the son's educational costs.
We conclude that the trial court's determination that the son was emancipated is not supported by the evidence. Although the son was employed and earning approximately $200 per week, he was not paying either parent for his room, board, clothing, vehicle, or gasoline.Compare Bradford v. Wallace, 757 So.2d 443, 444 (Ala.Civ.App. 1999) (affirming a trial court's determination that an 18-year-old child was self-supporting when the evidence indicated that the child was earning $1,300 per month and "giv[ing] the mother money at the mother's request"). The son paid only the bill for his cellular telephone and his automobile insurance premiums.
 "'Generally, parents owe a legal duty to support minors because children are unable to, and do not, support themselves. . . . When a minor is employed *Page 1158 
and self-supporting, and may properly be expected to continue to [be employed and self-supporting], [her] parents are relieved from the obligation of support. "Self-support" has its common and ordinary meaning, that is, the independent support of oneself.'"
Bradford v. Wallace, 757 So.2d at 444 (quoting Brooks v. Brooks,386 So.2d 472, 474 (Ala.Civ.App. 1980)) (bracketed language added inBradford).
We reverse that portion of the trial court's judgment holding that the son was emancipated. We remand the cause for the trial court to enter a judgment awarding child support pursuant to Rule 32, Ala.R.Jud.Admin., for the period between the entry of the original divorce judgment on January 29, 2002, and the son's 19th birthday on September 10, 2002. In all other respects, the trial court's judgment is affirmed.
OPINION OF MAY 9, 2003, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
[1] The husband testified that Boeing deposited funds representing unused sick leave time in this account. He explained that the financial security account was governed by the same income tax regulations as the 401(k) retirement account, and that heavy penalties were imposed for early withdrawal.
[2] The wife did not know what her pension benefits would be, but she testified that the monthly benefit would certainly be less than the $290 monthly amount the husband would receive, because, she reasoned, the husband had earned a larger salary and had worked more years than she had.
[3] The husband's vehicles were a 1992 GMC truck and a 1997 Chevrolet S-10 truck that the son drove. Neither truck was encumbered by indebtedness. The trial court directed the husband to transfer title to the 1997 truck to the son on the son's 19th birthday.
[4] This amount is derived by adding the disability income the wife receives to the disability income the daughter receives as a result of the wife's disability.
[5] Actually, the mortgage payments in the amount of $708 per month until the sale of the marital home when the daughter attains the age of 19 would likely be construed as alimony in gross, because the payments are fixed amounts and expressly limited to a certain period. See Wallsv. Walls, [Ms. 2010860, February 21, 2003] 860 So.2d 352 (Ala.Civ.App. 2003).
[6] In the trial court's amended judgment, entered on May 16, 2002, the trial court clarified this provision, stating that it found the minor child to be emancipated and, upon that basis, was relieving the husband of the obligation to pay child support for the son.