BOLIN, Justice.
M.D.C. (“the mother”) petitioned this Court for a writ of certiorari after the Court of Civil Appeals affirmed the trial court’s judgment holding that the obligation of K.D. (“the father”) to pay child support was automatically extinguished when his parental rights were terminated. We granted certiorari review to consider a material question of first impression for this Court: whether the Alabama Child Protection Act, § 26-18-1 et seq., Ala. Code 1975 (“CPA”),[1] which governs the termination of parental rights, also terminates a parent’s responsibility to pay child support.

Facts and Procedural History

Two children were born of the parties’ marriage. The mother had a child from a previous marriage. The parties divorced in February 2003. In August 2003, the father pleaded guilty to three counts of second-degree rape. He was sentenced to prison and has since been released. The victim was the mother’s minor child from the previous marriage. The divorce judgment awarded custody of the parties’ two children to the mother and ordered the father to pay $540 per month in child support. In October 2005, a juvenile court granted the mother’s petition seeking to terminate the father’s parental rights to their two minor children.
On January 4, 2007, the State, on behalf of the mother, filed a petition to require the father to show cause why he should not be held in contempt for his alleged failure to pay his child-support obligation. The father answered, denying the material allegations in the petition. After a hearing, the trial court entered a judgment on May 6, 2007, finding the father in arrears in the amount of $16,730 in child support plus $486 in interest. The father and the State filed motions to alter, amend, or vacate the judgment or, in the alternative, for a new trial.
Pursuant to Rule 59.1, Ala. R. Civ. P., the parties agreed to extend the time for the trial court to rule on the parties’ post-judgment motions. The trial court granted both parties’ requests for a new trial. The case was submitted to the trial court on the pleadings, the previously taken testimony, and certain stipulations by the parties. On January 8, 2008, the trial court entered an order finding that the father’s obligation to pay child support was extinguished when his parental rights were terminated in October 2005. The mother appealed.
A majority of the Court of Civil Appeals noted that the CPA, which governed the *1120 termination of parental rights in 2005, does not address the issue of a parent’s obligation to pay child support after his or her parental rights are terminated. M.D.C. v. K.D., 39 So.3d 1105 (Ala.Civ.App.2008). The Court of Civil Appeals noted that this case presents an issue of first impression. However, that court cited several decisions in which it says appellate courts have indicated that a parent is no longer obligated to pay child support after the parent’s parental rights have been terminated. The Court of Civil Appeals stated that a majority of states addressing the issue have held that the termination of parental rights extinguishes a parent’s duty to support the child. The court held that the purpose of Alabama’s juvenile laws, particularly in parental-termination cases, is to provide children with stability and permanency and that to further the goal of permanently placing a child, which may include adoption after the termination of parental rights, the parental relationship with the child must be totally severed after parental rights are terminated.

Standard of Review

“On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.” Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala.1996).

Analysis

Section 26-18-7(a), Ala.Code 1975 (now § 12-15-319), of the CPA provides as follows:
“If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
It is clear from the statute that the juvenile court may terminate a parent’s parental rights if that parent is unwilling or unable to discharge his or her “responsibilities to and for the child.” Nothing in the CPA addresses whether a parent’s duty to pay child support is terminated when his or her parental rights are terminated.
In a well written dissent to the Court of Civil Appeals’ opinion, Judge Moore opined that a parent’s obligation to pay child support is not extinguished under the CPA when the parent’s parental rights are terminated. After considering the record and the main opinion of the Court of Civil Appeals, we find the dissenting opinion accurately interprets the law on this subject, and we adopt its reasoning.
As Judge Moore noted, the CPA does not define “parental rights,” nor does it define “responsibilities to and for the child.” 39 So.3d at 1120. The Alabama Juvenile Justice Act (“the AJJA”), § 12-15-1 et seq., Ala.Code 1975,[2] clarifies the meaning of those terms and there are *1121 cases recognizing the interplay between the CPA and AJJA. See e.g., Ex parte Beasley, 564 So.2d 950 (Ala.1990); Clemons v. Alabama Dep’t of Pensions & Security, 474 So.2d 1143 (Ala.Civ.App.1985). Additionally, the legislature merged the CPA and AJAA, effective January 1, 2009. See Act No. 2008-277, Ala. Acts 2008. In his dissenting opinion, Judge Moore stated:
“Section 12-15-1(17) [now § 12-15-102(16)), Ala.Code 1975, defines ‘legal custody’ as
“ ‘[a] legal status created by court order which vests in a custodian the right to have physical custody of the child and to determine where and with whom the child shall live within the state and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, clothing, education, and ordinary medical care, all subject to the powers, rights, duties, and responsibilities of the guardian of the person of the child and subject to any residual parental rights and responsibilities .... ’
“The AJJA then provides that ‘residual parental rights and responsibilities’ include:
“ ‘[t]hose rights and responsibilities remaining with the parent after the transfer of legal custody or guardianship of the person, including, but not necessarily limited to, the right of visitation, the right to consent to adoption, the right to determine religious affiliation, and the responsibility for support.’
“§ 12-15-1(24) [now § 12-15-102(23)], Ala.Code 1975. Our supreme court has stated that related statutes should, when possible, be construed in pari materia, Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 988 (Ala.1999), and that legislative definitions are binding on the court. See McWhorter v. State Bd. of Registration for Prof'l Eng’rs & Land Surveyors, 359 So.2d 769, 773 (Ala.1978).
“Reading the statutory definitions of parental rights and responsibilities found in § 12-15-1 into § 26-18-7 [now § 12-15-319, as amended] reveals the legislature’s intent:
“‘If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their [parental duties, including the duties to protect, to educate, to care for, to provide for, to maintain, and to support the child], or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the [parents’ rights, including the rights to custody, to visitation, to control the child’s education, training, discipline, and religious affiliation, and to consent to adoption].’
“Construing the two statutes together, if a juvenile court finds clear and convincing evidence indicating that a parent is unable to discharge his or her parental responsibilities, the juvenile court may on that basis terminate the rights of the parent to the child,3 but not the parent’s responsibility to provide child support.4
“3 The new juvenile code, which takes effect on January 1, 2009, defines ‘termination of parental rights’ as ‘[a] severance of all rights of a parent to a child.’ Ala. Acts 2008, Act No. 2008-277, § 16. This definition clarifies the legislative intent that a judgment terminating parental rights severs the rights of the parent to the child but does not sever *1122 the rights of the child to the parent, which includes the right to support. See Ex parte Tabor, 840 So.2d 115, 120 (Ala.2002), quoting with approval Willis v. Levesque, 402 So.2d 1003, 1004 (Ala.Civ.App.1981) (recognizing that children have an inherent right to child support from parents). When a legislature amends a statute to define a previously undefined term, it must be considered that the legislature has attempted to clarify any ambiguity in that term and the court should take notice of that action when determining the legislative intent. See Alfa Mut. Ins. Co. v. City of Mobile, 981 So.2d 371, 383 (Ala.2007).
“4 I do not mean to be understood as saying that a juvenile court may never terminate child support. I am merely saying that § 26-18-7 does not authorize a juvenile court to terminate child support based solely on clear and convincing evidence supporting grounds for termination of parental rights.”
M.D.C. v. K.D., 39 So.3d at 1109-10 (Moore, J., dissenting) (footnote omitted).
In his dissent, Judge Moore recognized two longstanding principles of statutory construction: (1) that words used in a statute are given their commonly understood meaning and (2) that a court is bound to give effect to the legislative purpose behind a statute. With regard to those principles and the CPA, he stated:
“Even if the court cannot read § 12-15-1 into § 26-18-7, the term ‘parental rights’ cannot be construed to encompass the responsibility for child support.
“ “Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’
“IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992). The term ‘parental rights’ ordinarily refers to
“ ‘[a] parent’s rights to make all decisions concerning his or her child, including the right to determine the child’s care and custody, the right to educate and discipline the child, and the right to control the child’s earnings and property.’
“Black’s Law Dictionary 1146 (8th ed.2004). A ‘right’ is ‘something to which one has a just claim: as ... the power or privilege to which one is justly entitled.’ Merriam-Webster’s Collegiate Dictionary 1073 (11th ed.2003). Legally speaking, a ‘responsibility’ is a ‘liability.’ Black’s Law Dictionary 1338 (8th ed.2004). Even in the more ordinary usage, ‘responsibility’ refers to a burden for which one is accountable. See Merriam-Webster’s Collegiate Dictionary 1062 (11th ed.2003). A ‘parental responsibility,’ therefore, would be a burden or liability one owes due to his or her status as a parent. Hence, even without reference to § 12-15-1, the CPA authorizes a juvenile court to terminate those parental rights that Alabama law recognizes for the inability or unwillingness of the parent to properly discharge his or her legal duties to the child.
“Alabama law has long recognized that a parent has a natural legal right to the custody, companionship, care, and rearing of his or her child but that the parent also has a legal obligation to support, care, and train the child. Chandler v. Whatley, 238 Ala. 206, 189 So. 751 (1939); P.Y.W. v. G.U.W., 858 So.2d 265, 267 (Ala.Civ.App.2003). Alabama law holds that it is the child who *1123 possesses the inherent and fundamental right to support from the- parent. Abel v. Abel, 824 So.2d 767, 768 (Ala.Civ.App.2001). A custodial parent has no right to child support but merely receives support on behalf of the child whose right it is. State ex rel. Dep’t of Human Res. v. Sullivan, 701 So.2d 16 (Ala.Civ.App.1997). On the other hand, Alabama law impresses upon parents a legal duty to support their minor children. Ex parte McCall, 596 So.2d 4 (Ala.1992); Miller v. Miller, 866 So.2d 1150, 1157-58 (Ala.Civ.App.2008); and Davis v. Gyllenhaalr-Davis, 516 So.2d 665 (Ala.Civ.App.1987). A parent may be held civilly or criminally liable for a failure to discharge the responsibility to support his or her child. See Ex parte University of South Alabama, 541 So.2d 585 (Ala.1989); Ala.Code 1975, § 13A-13-4.
“As a matter of plain English, the CPA, in authorizing a juvenile court to ‘terminate the parental rights’ of a parent, does not empower a juvenile court to terminate child support. Had the legislature intended that a termination of ‘parental rights’ would also include a termination of ‘parental responsibilities,’ such as the responsibility to support the parent’s children, it could have used language apt to that purpose. For example, the Alabama Adoption Code, Ala. Code 1975, § 26-10A-1 et seq., provides that a parent who consents to the adoption of his or her child forfeits ‘all rights and obligations,’ Ala.Code 1975, § 26-10A-11(a)(6) (emphasis added), and that ‘[u]pon a final decree of adoption, the natural parents of the adoptee, except for a natural parent who is the spouse of the adopting parent are relieved of all parental responsibility for the adoptee and will have no parental rights over the adoptee.’ Ala.Code 1975, § 26-10A-29(b) (emphasis added). It appears that the legislature deliberately worded § 26-18-7 to authorize only a termination of parental rights, not parental responsibilities. ‘ “The judiciary will not add that which the Legislature chose to omit.” ’ State v. Dean, 940 So.2d 1077, 1080 (Ala.Crim.App.2006)(quoting Ex parte Jackson, 614 So.2d 405, 407 (Ala.1993)). The only way to give the plain language of the CPA its intended effect is to hold that a termination of parental rights does not automatically terminate the parent’s child-support obligation.
‘Although I find no ambiguity in § 26-18-7, if the language of a statute is ambiguous the court is bound to construe the statute to give effect to the legislative purpose behind its enactment. IMED Corp., 602 So.2d at 346. The purpose of the CPA is
“‘to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents.’
“Ala.Code 1975, § 26-18-2 [repealed effective January 1, 2009]. Section 26-18-7 provides a means of terminating parental rights when a child’s welfare is threatened by continuation of those rights. Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987), overruled on other grounds by Ex parte Beasley, 564 So.2d 950 (Ala.1990). ‘ “Paramount in a determination regarding the termination of parental rights is a consideration of the child’s best interest.” ’ J.C. v. State Dep’t of Human Res., 986 So.2d 1172, 1193 (Ala.Civ.App.2007) (quoting T.S. v. J.P., 674 So.2d 535, 537 (Ala.Civ.App.1995)) (emphasis omitted).
“In interpreting § 26-18-7 so that a judgment involuntarily terminating parental rights automatically discharges a *1124 parent from liability for future child support, the majority undermines the purpose of the statute in at least two ways. First, in many cases it will force responsible parents to choose between filing a petition to terminate the parental rights of an abusive and neglectful coparent to protect their children or to forgo filing such a petition in order to preserve the children’s right to support. Second, in many cases, including this one, the majority’s interpretation will require children to depend on state aid that may be far less remunerative than the child support to which they would otherwise be entitled.
“On the other hand, by interpreting § 26-18-7 according to its plain language, the court would assure the fullest possible relief for the child. A judgment terminating parental rights immediately and permanently severs the parent’s right to custody, control, and affiliation with the child. See In re Grayson, 419 So.2d 234, 287 (Ala.Civ.App.1982) (Bradley, J., concurring specially). The judgment protects the child from the potential for future harm flowing from the affected parent by forever preventing the parent from asserting any parental rights. However, the child will continue to be entitled to at least one beneficial aspect of that relationship if the parental obligation for support remains undisturbed. Responsible parents would not have to fear jeopardizing their children’s right to support by filing meritorious petitions for termination of parental rights. Irresponsible parents would realize that they cannot escape liability for child support by abusing or neglecting their children. In addition, dependent children would not have to rely entirely on the state for subsistence.”
M.D.C. v. K.D., 39 So.3d at 1110-12 (Moore, J., dissenting).
In his dissent, Judge Moore went on to address several contentions raised in the main opinion of the Court of Civil Appeals. The majority of the Court of Civil Appeals, relying on a Kansas case,[3] stated that one of the purposes of the CPA is to promote stability and permanency and that to accomplish that goal, the prior parental relationship must be totally severed. We agree with Judge Moore that holding that the duty to pay child support survives a termination of parental rights does not impede the goal of stability and permanency. Section 26-10A-29 (b), Ala.Code 1975, provides that the duty to provide child support is extinguished by an adoption, with adoption being one option for providing stability and permanency. The termination of parental rights protects the child from any abuse or neglect arising out of the parental relationship, but terminating the duty to pay child support does not protect the child from any such abuse or neglect. Eliminating the benefit of child support after a termination of parental rights does nothing to protect the child from any harm emanating from the prior parental relationship; instead, it denies the child benefits based on the child’s needs and the parent’s ability to pay. If the child is adopted or emancipated, then the child-support obligation ceases. Additionally, the child-support obligation ceases upon the child’s reaching majority or the paying parent’s death.
Judge Moore addressed the majority’s reading of § 26-18-7, which raised a jurisdictional question:
“The majority’s reading of § 26-18-7 also violates established law that once a circuit court enters a child-support order in a divorce proceeding, the circuit court retains exclusive jurisdiction to modify *1125 that order, which precludes a juvenile court from adjudicating child-support issues in a termination-of-parental-rights action. See A.S. v. W.T.J., 984 So.2d 1196, 1202 (Ala.Civ.App.2007). In this case, the trial court entered a child-support order as part of a divorce judgment in February 2003, requiring the father to pay $540 per month for the benefit of his children. If the majority is correct, the juvenile court terminated that child-support obligation in October 2005, although it lacked jurisdiction to do so. Rather than bestow upon juvenile courts jurisdiction that this court has heretofore not recognized, we should hold that the trial court had exclusive continuing jurisdiction over its own child-support order and that the judgment terminating parental rights could not have possibly affected the father’s obligation as established in that order.7
“7 A circuit court that has entered a judgment containing a child-support order may modify that order based on a material change of circumstances affecting the best interests of the child. See, e.g., Campbell v. Tolbert, 656 So.2d 828 (Ala.Civ.App.1994). Although not necessary to resolve the precise issue before the court, I note that the trial court would have had jurisdiction to consider any petition filed by the father to terminate his child-support obligation after his parental rights had been terminated. Although I believe that the mere termination of parental rights is insufficient to prove a material change of circumstances and that it would rarely be in the best interest of the child to terminate child support, it is possible that under some circumstances a circuit court could conclude that terminating child support would prevent exposing the child further to the parental conduct, condition, or circumstances underlying the judgment terminating parental rights. Regardless of the merits of the petition, only the circuit court that entered the divorce judgment would have jurisdiction to make that determination.”
M.D.C. v. K.D., 39 So.3d at 1113 (Moore, J., dissenting).
Judge Moore also addressed the majority’s reliance upon previous caselaw in which appellate courts indicated that a parent was no longer obligated to pay child support after that parent’s rights were terminated. We agree with his interpretation of those cases. Judge Moore stated:
“In Ex parte Brooks, [513 So.2d 614 (Ala.1987) ], the supreme court held that a father could not voluntarily agree to a termination of his parental rights for the sole purpose of avoiding his child-support obligation. In the opinion, the court assumed that a judgment terminating parental rights would end the father’s obligation to pay child support. 513 So.2d at 617. The Brooks court did not cite any legal authority for that proposition. It also utterly failed to consider whether a judgment may terminate parental rights without affecting parental responsibilities, such as the duty to support the child. At any rate, the Brooks court did not actually decide that the judgment had the effect of terminating child support, which renders its discussion pure dicta. All the other cases cited by the majority either rely directly on Brooks, see C.M. v. D.P., 849 So.2d 963, 965-66 (Ala.Civ.App.2002), State ex rel. McDaniel v. Miller, 659 So.2d 640, 642 (Ala.Civ.App.1995), J.C. v. State Dep’t of Human Res., 986 So.2d at 1202-03, or, like Brooks, on no legal authority at all. See Ex parte University of South Alabama, 541 So.2d [535] at 538 [ (Ala.1989) ]. Alabama law actually holds that the only events that impliedly terminate child support are the child’s *1126 reaching the age of majority, see State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995), the emancipation of the child, see Anderson v. Loper, 689 So.2d 118, 120 (Ala.Civ.App.1996) (citing B.A. v. State Dep’t of Human Res. ex rel. R.A., 640 So.2d. 961, 962 (Ala.Civ.App.1994)), the adoption of the child, see Ala.Code 1975, § 26-10A-29(b), and the death of the child or the obligor-parent, see Pittman v. Pittman, 419 So.2d 1376, 1880 (Ala.1982).”
M.D.C. v. K.D., 39 So.3d at 1113-14 (Moore, J., dissenting) (footnotes omitted).
Judge Moore also addressed the reliance of the majority of the Court of Civil Appeals in its main opinion upon cases from other jurisdictions that have addressed the issue whether the termination of parental rights also terminates the duty to pay child support. In that regard, Judge Moore stated:
“It is true that the vast majority of other states have construed their termination-of-parental-rights statutes so as to encompass termination of child support.10 However, most other state statutes explicitly state that a termination of parental rights completely severs the parent-child relationship, see, e.g., 10 Okla. Stat. tit. 1981, § 1132 (cited in McCabe v. McCabe, 78 P.3d 956, 958 (Okla.2003)), Fla. Stat. 63.062(1)(b) (quoted in Ponton v. Tobares, 711 So.2d 125, 126 (Fla.Dist.Ct.App.1998)), and Miss.Code Ann. § 93-15-103(2) (quoted in Beasnett v. Arledge, 934 So.2d 345, 347 (Miss.Ct.App.2006)), or terminates the rights and responsibilities of the parent to the child,11 see Cal. Family Code § 7803 (quoted in County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 1124, 106 Cal.Rptr.2d 461, 462 (2001)). In other states the term ‘parental rights’ has been construed to mean ‘parental rights and responsibilities’ based on a passage from Anguis v. Superior Court in and for Maricopa County, 6 Ariz. App. 68, 429 P.2d 702 (1967),12 in which the court stated:
“ ‘We are faced here with the limited question of whether or not the Juvenile Court may conduct a hearing and sever the parental rights of a parent to a child without there first being a pending adoption. Before we consider this matter we must consider the meaning of the term “parental rights”. The rights of a parent regarding its child are quite often confused with parental obligations or the rights of the child to care, custody, support, inheritance and other obligations from the parent to the child. Our statute A.R.S. § 14-206, for example, provides that every child is entitled to support and education from its natural parents. As used herein we construe the term “parental rights” in the broader term as the sum total of the rights of the parent or parents in and to the child as well as the rights of the child in and to the parent or parents. In other words, we construe parental rights to include both parental rights and parental obligations.’
“6 Ariz.App. at 71, 429 P.2d at 705. Notably, that passage is totally devoid of any use of the rules of statutory construction or any other legal reasoning. It appears that the court simply decided without any basis that the term ‘parental rights’ as used in Arizona’s termination-of-parental-rights statute means ‘both parental rights and parental obligations.’ I find that ‘analysis’ to be totally unpersuasive.[13]
“On the other hand, in State of Rhode Island v. Fritz, 801 A.2d 679 (R.I.2002), the court held that a termination of parental rights does not terminate the par *1127 ent’s responsibility to pay child support by operation of law. The court said:
“ ‘Although some courts, absent a.specific statutory provision or statutory ambiguity, have held that termination of parental rights ends financial obligations as well, it is our opinion that under current Rhode Island statutes, parental financial support continues until a child has been emancipated, adopted, reaches the age of majority, or until the obligation has been duly terminated after the Family Court has held a hearing and issued an order stating its findings.
“ ‘In some jurisdictions, the term “parental rights” has been interpreted as incorporating all the rights of the parental relationship, including not only those rights that flow to the parent, but also those, such as the right to financial support, that flow to the child. See, e.g., County of Ventura v. Gonzales, 88 Cal.App.4th 1120, 106 Cal.Rptr.2d 461, 464 (2001) (citing State Welfare Division, Department of Human Resources v. Vine, 99 Nev. 278, 662 P.2d 295, 298 (1983)). The plain language of Rhode Island’s termination of parental rights statute, § 15-7-7, addresses only the “legal rights of the parent to the child” and not the reciprocal rights of the child with respect to the parent. Because this Court consistently has declined “ ‘[to] interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without ■ the implication,’ ” Wehr, Inc. v. Truex, 700 A.2d 1085, 1088 (R.I.1997) (per curiam) (quoting State v. Feng, 421 A.2d 1258, 1264 (R.I.1980)), we interpret the General Assembly’s silence as an indication that it did not intend that § 15-7-7 terminate the right of the child to support by the parents.’
“801 A.2d at 685.
“The majority reiies on the principle from Coffey v. Vasquez, 290 S.C. [348] at 350, 350 S.E.2d at 397-98 [(Ct.App.1986)], that the duty of support is “‘correlative to the parent’s rights in and to the child.’” 39 So.3d at 1108. However, that statement is not consistent with Alabama law, which provides that a parent remains obligated to pay child support even when the parent has no custodial rights and the children refuse visitation, McWhorter v. McWhorter, 705 So.2d 423 (Ala.Civ.App.1997), or even when the noncustodial parent has no contact with the child. See Kernop v. Taylor, 628 So.2d 707 (Ala.Civ.App.1993).[14] Our law is more consistent with that of West Virginia, which holds that ‘the duty to pay child support and the right to exercise visitation are not interdependent.’ Carter v. Carter, 198 W.Va. 171, 177, 479 S.E.2d 681, 687 (1996). Accordingly, the West Virginia Supreme Court has held that the mere fact that all parental rights, including the right to visitation, have been terminated does not impact the parent’s duty to support the child. In re Stephen Tyler R., 213 W.Va. 725, 742, 584 S.E.2d 581, 598 (2003).
“10 In at least one state in which the courts construed their statute to end a parent’s child-support obligation upon a judgment terminating parental rights, the legislature amended the statute to provide for the continuation of such support. See 10 Okla. Stat. tit. 2001, § 7006-1.3(B)(3) (amended by 1995 Okla. Sess. Laws, ch. 352, §§ 67 and 199, effective July 1, 1995) (‘Child support orders shall be entered by the court that terminates parental rights and shall remain in effect until the court of termination receives notice from the placing *1128 agency that a final decree of adoption has been entered and then issues an order terminating child support and dismissing the case.’). See also Tex. Fam. Code Ann. § 154.001(a-1) (amended by 2005 Tex. Sess. Law Serv., ch. 268, § 1.08(a), effective September 1, 2005) (requiring financially able parent whose rights have been terminated to continue making child-support payments until child is adopted).
“u In Gabriel v. Gabriel, 519 N.W.2d 293 (N.D.1994), the court actually found that the duty to pay child support ended after the father’s parental rights had been terminated and the child had been adopted by the mother’s new husband because the North Dakota Adoption Code provided that adoption ‘ “[r]e-lieve[s] the natural parents of the adopted individual of all parental rights and responsibilities, and ... terminate[s] all legal relationships between the adopted individual and his relatives, including his natural parents....”’ 519 N.W.2d at 295 (quoting N.D. Cent.Code § 14—15—14(1)(a)). The identical language used in Ohio Rev.Code Ann. § 8107.15(A)(1) convinced the court in In re Seheehle, 134 Ohio App.3d 167, 169, 730 N.E.2d 472, 474 (1999), that an interlocutory adoption order absolved the natural father of the duty to pay child support.
“12 Anguis is quoted or cited in McCabe v. McCabe, supra; County of Ventura v. Gonzales, supra; Kansas ex rel. Sec’y of Soc. & Rehab. Servs. v. Clear, [248 Kan. 109, 804 P.2d 961 (1991) ]; Nevada v. Vine, 99 Nev. 278, 662 P.2d 295 (1983); Coffey v. Vasquez, 290 S.C. 348, 350 S.E.2d 396 (Ct.App.1986); and Commonwealth ex rel. Spotsylvania County Dep’t of Soc. Servs. v. Fletcher, 38 Va.App. 107, 562 S.E.2d 327 (2002), aff'd, 266 Va. 1, 581 S.E.2d 213 (2003).
“13I find similarly unpersuasive the holding in Kauffman v. Truett, 771 A.2d 36, 39 (Pa.Super.Ct.2001), that a termination of parental rights also extinguishes the parent’s child-support obligation. In Truett, the court relied exclusively on Monroe County Children & Youth Services v. Werkheiser, 409 Pa.Super. 508, 512, 598 A.2d 313, 315 (1991), in which the parties agreed ‘that termination of parental rights absolves the parent of her duty to pay support....’ Obviously, if the parties stipulated as to that issue, the Werkheiser court never decided for itself whether a termination of parental rights does, in fact, terminate the parent’s obligation to support the child, and the Truett court erroneously failed to independently investigate that issue.
“14 Based on our consistent precedents, I do not agree with the statement ‘that the parental obligation of support is in tandem with the benefits of a parent-child relationship.’ 39 So.3d at 1114-17. That statement should not be construed as relieving noncustodial parents of their obligation to pay child support despite their loss of access to the child or the loss of any other benefits of the parent-child relationship.”
39 So.3d at 1114-17 (Moore, J., dissenting).
A parent has a fundamental liberty interest in the care, custody, and management of his or her child. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, this interest is not absolute; it “is limited by the compelling government interest in the protection of children — particularly where the children need to be protected from their own parents.” Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir.1997). The state has a parens patriae interest in the welfare of the child. Santosky, 455 *1129 U.S. at 766, 102 S.Ct. 1388. In protecting children from parental abuse and neglect, every state has a statutory means for involuntarily terminating a parent’s rights, and those statutes vary. The plain language of the CPA addresses only the termination of a parent’s responsibilities to and for his or her child. § 26-18-7.
Justice Murdock’s dissent relies on Ex parte Brooks, 513 So.2d 614 (Ala.1987), overruled on other grounds by Ex parte Beasley, 564 So.2d 950 (Ala.1990), in which the divorced parents of a child asked the trial court to terminate the father’s parental rights. The mother wanted to terminate the father’s rights because he had shown no interest in the child and because he lacked stability, was ill-tempered, and disagreed with the child’s being raised in the Jewish faith. The father generally agreed with the mother and stated that he had no interest in visiting the child. The trial court denied the petition. The Court of Civil Appeals concluded that the termination of the father’s parental rights was appropriate because the father had abandoned the child. The guardian ad litem sought review in this Court. The guardian ad litem, in seeking to protect the child’s best interest, including his right to receive financial support, assumed that a termination of parental rights also terminated the duty to pay child support. This Court did the same, stating, without citing to any authority: “The Child Protection Act of 1984, as we have noted, was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child through the termination of parental rights.” 513 So.2d at 617. Brooks and its progeny continue to rely on this unsupported assumption.[4]
Justice Murdock’s dissent, in relying on this Court’s assumption in Brooks, sets out a well settled principle of statutory construction that the legislature is presumed to be aware of judicial construction relevant to legislation it has enacted when it adopts a subsequent statute on the same subject and that it is further presumed that the legislature did not intend to make any alterations in the law beyond what it explicitly declared. In other words, because the legislature amended the CPA after this Court issued its opinion in Brooks, we should presume that the legislature intended that a termination of parental rights would also terminate the obligation to pay child support. Although this principle of statutory construction is important, it should not be a ratification by the legislature of its intent in the present case when this Court did not interpret the statute or address the issue but merely made an assumption that a termination of parental rights automatically extinguished the duty of the parent whose rights are being terminated to pay child support. Certainly, this presumption can be overcome by the clear and express language in the statute. After all, the goal of statutory construction is to determine the intent of the legislature, and that is best done by the words of the statute.
Justice Murdock in his dissent writes that rights and obligations generally go hand in hand, including parental rights and the parental obligation to pay child support. Alabama has never held (nor would it be in the best interest of the child to do so) that a fit parent should be prevented from visitation with his or her child simply because the parent is unable to pay child support. As Judge Moore noted in his dissent, a parent remains obligated to *1130 pay child support even when the parent has no custodial rights and the child refuses visitation or when the noncustodial parent has no contact with the child. A further example that a parent’s rights are not and cannot be tethered to a parent’s obligation is found in the Alabama Adoption Code, in which a father can be found to have abandoned his child in útero when the “father, with reasonable knowledge of the pregnancy, [fails] to offer financial and/or emotional support for a period of six months prior to the birth.” § 26-10A-9, Ala.Code 1975.
A parent has a common-law duty to support his or her child. See Atkins v. Curtis, 259 Ala. 311, 315, 66 So.2d 455, 458 (1953)(“A man is under a common law duty to support his wife and child.”). The Alabama Legislature has enacted statutes imposing a duty of support on a noncustodial parent in a divorce proceeding or on a parent pursuant to a paternity proceeding. The common-law duty to support one’s child remains after the termination of parental rights. We note that as a practical matter, even Brooks recognized that it is harmful to a child to be denied the benefit of financial support. Judge Moore in his dissent made the valid point that terminating child support may require children to depend on state aid that may be far less remunerative than child support. 89 So.3d at 1112. The Massachusetts Supreme Court has aptly stated: “[T]axpayers [should be] secondary to parents in meeting the financial needs of dependent children.” In re Adoption of Marlene, 443 Mass. 494, 501, 822 N.E.2d 714, 719 (Mass.2005).
Although the majority of other jurisdictions have addressed whether a termination of parental rights automatically terminates the obligation to pay child support, those statutes vary from state to state. As Judge Moore noted, most other state statutes explicitly provide that a termination of parental rights completely severs the parent-child relationship, or they terminate both the rights and responsibilities of the parent to the child. 39 So.3d at 1114-15. The plain language of Alabama’s statute simply does not do so. Judge Moore also pointed out that courts of other states had relied on an unsupported conclusion from the Arizona appellate court in concluding that the term “parental rights” means “both parental rights and obligations.” 39 So.3d at 1115.
Judge Moore quoted from State of Rhode Island v. Fritz, 801 A.2d 679 (R.I.2002), as a case from one state that has held that a termination of a parent’s parental rights does not bring the continuing child-support obligation to an end by operation of law. We add that the West Virginia Supreme Court has held that the parent’s obligation to pay child support was not automatically extinguished by a termination of parental rights. In re Stephen Tyler R., 213 W.Va. 725, 584 S.E.2d 581 (2003). The West Virginia termination statute provided that the court may “ ‘terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent.’ ” 213 W. Va. at 736, 584 S.E.2d at 592 (quoting W. Va.Code § 49-6-5(a)(6) (Supp.2003)). That court held “[t]he plain language of this statute affords the circuit court the options of either terminating the abusing parent’s parental rights, terminating his/her responsibilities, or terminating both the parent’s parental rights and responsibilities.” 213 W.Va. at 740, 584 S.E.2d at 596. In response to the terminated father’s argument that to continue his child-support obligation was “patently unfair when he no longer has the right to visit or otherwise have contact ■with his son,” the court explained that ‘“child support payments are exclusively *1131 for the benefit and economic best interest of the child,’ ” and that “ ‘the duty to pay child support and the right to exercise visitation are not interdependent.’” 213 W. Va. at 743, 584 S.E.2d at 598 (quoting Carter v. Carter, 198 W.Va. 171, 479 S.E.2d 681, 686-87 (1996)). See also Evink v. Evink, 214 Mich.App. 172, 174, 542 N.W.2d 328, 330 (1995) (holding that father was obligated to pay child support even though he had voluntarily terminated his parental rights because “absent adoption, the obligation to support a child remains with the natural parents”).
Justice Murdock’s dissent questions whether an unintended consequence of the opinion this Court releases today could be the creation of “additional delay in adoption proceedings,” resulting from a possible increase in termination proceedings. 39 So.3d at 1144. It is arguable that the exact opposite will occur, for two reasons. First, we note that in order to terminate a parent’s rights, clear and convincing evidence must be presented. Santosky, 455 U.S. at 769, 102 S.Ct. 1388.
“The two-prong test that a court must apply in parental rights termination case brought by a custodial parent consists of the following: First, the court must find that there are grounds for the termination of parental rights, including, but not limited to, those specifically set forth in § 26-18-7. Second, after the court has found that there exist grounds to order the termination of parental rights, the court must inquire as to whether all viable alternatives to. a termination of parental' rights have been considered. (As earlier discussed, if a nonparent, including the State, is the petitioner, then such a petitioner must meet the further threshold proof of dependency.)”
Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990). With regard to frivolous claims that may be filed, our juvenile courts, as they do with all cases, are certainly capable of determining whether a petition to terminate parental rights lacks merit. Also, the Alabama Rules of Civil Procedure provide several methods for disposing of meritless claims. Additionally, we note that there are provisions that give priority to appeals of termination proceedings. See § 12-15-323, effective January 1, 2009. (“Appeals relating to dependency and termination of parental rights cases should take priority over other cases filed on appeal except for emergency matters ....”) Second, the Alabama Adoption Code provides for a transfer of the duty and obligation of support by interlocutory order in almost all adoption proceedings from the time a petitioner has received an adoptee into his or her home and a petition for adoption has been filed. § 26-10A-18, Ala.Code 1975. This provision of the Adoption Code delegates custody (unless custody is retained by the Department of Human Resources or a licensed child-placing agency that held custody at the time of placement) as well as “(2) the responsibility for the care, maintenance, and support of the adoptee, including any necessary medical or surgical treatment, pending further order of the Court.” Thereafter, as Judge Moore correctly noted, § ,26-10A-29, Ala.Code 1975, provides that upon a final judgment of adoption being entered, the parental responsibility for the adoptee is extinguished. 39 So.3d at 1112-13. Therefore, the “deadbeat” parents referred to by Justice Murdock in his dissent, armed with knowledge that a termination of their parental rights would not abrogate their duty of support, might be inclined more quickly to consent to an adoption where relief may be provided to terminate their support obligation.
Justice Smith, joined by Chief Justice Cobb, agrees that § 26-18-7 can only be interpreted to provide that the termination of parental rights does not automatically *1132 terminate a parent’s obligation to pay child support. Justice Smith, joined by Chief Justice Cobb, notes in her special writing that it would have been prudent to have input from other entities by way of additional briefing, in particular the Department of Human Resources (“DHR”), as to what actions DHR will take “for those children in its custody who have not yet been adopted but as to whom parental rights have been terminated.” 39 So.Sd at 1133. In other words, Justice Smith and Chief Justice Cobb are in agreement with the interpretation of § 26-18-7 in this opinion and appear to be seeking input as to what DHR’s response will be, as it is “now faced with deciding the appropriate course of action” based on this Court’s interpretation of the relevant statutory language. 39 So.3d at 1133. 1 Although DHR, as the usual party seeking to terminate an unfit parent’s rights, will undoubtedly have to make a determination as to how to proceed under this Court’s interpretation of § 26-18-7, that issue is not before us in this case, nor would DHR’s input as to what it might do if this Court interpreted § 26-18-7 so as to terminate only parental rights have been instructive. We note that Justice Smith and Chief Justice Cobb are not seeking DHR’s assistance as a friend of the Court in interpreting § 26-18-7. As with Justice Murdock’s discussion of scenarios that might arise based on our interpretation of § 26-18-7, we must leave those questions for another day (if indeed those scenarios proposed by Justice Murdock arise).

Conclusion

In summary, involuntarily terminating a parent’s rights to his or her child does not, by operation of law, extinguish the parent’s responsibility to pay child support for the benefit of that child as established by a prior judgment. The CPA, which governs the termination of parental rights, does not address the termination of child support. Reading the CPA in conjunction with the AJJA,[5] if a juvenile court finds clear and convincing evidence indicating that a parent is unable or unwilling to discharge his or her parental responsibilities, the juvenile court may on that basis terminate the rights of the parent to the child but not the parent’s responsibility to provide child support.[6] Additionally, the plain language of the CPA refers to “parental rights” and should not be construed to encompass the responsibility for child support. Had the legislature intended that a termination of parental rights would also terminate parental responsibilities, such as the responsibility to support the child, the legislature could have easily used such language. A judgment terminating a parent’s rights immediately and permanently severs the parent’s rights to custody, control, and affiliation with the child. The judgment forever prevents the parent from asserting any parental rights over the child and, *1133 thus, protects the child from future harm flowing from the parent whose rights have been terminated. Nothing in the CPA prevents the child from being entitled to at least the beneficial aspect of the obligation for support arising out of the parent-child relationship. With the goal of promoting stability and permanency, there is nothing in Alabama law preventing a child from entering the adoption process merely because its natural parent, whose parental rights have been terminated, remains under court order to pay child support and the subsequent adoption will terminate the child-support obligation by law. To hold otherwise would reward the most egregious cases of parental abuse and neglect by that parent’s not having the burden of paying child support.
Accordingly, we reverse and remand.
REVERSED AND REMANDED.
SHAW, J., concurs.
COBB, C.J., and STUART and SMITH, JJ., concur specially.
PARKER, J., concurs in the result.
LYONS, WOODALL, and MURDOCK, JJ., dissent.

. Effective January 1, 2009, the CPA and the former Alabama Juvenile Justice Act were consolidated by the enactment of a new Alabama Juvenile Justice Act, codified at § 12-15-101 et seq., Ala.Code 1975. See Act No. 2008-277, Ala. Acts 2009. The provisions of the CPA and the former Alabama Juvenile Justice Act have been revised and reorganized and some have been repealed by the new Alabama Juvenile Justice Act.

. Effective January 1, 2009, the provisions of Chapter 15 were amended and renumbered. As amended, they are now found at § 12 — 15— 101 et seq.

. Kansas ex rel. Sec'y of Soc. & Rehab. Servs. v. Clear, 248 Kan. 109, 804 P.2d 961 (1991).

. Regardless of whether the Court’s assumption in Brooks is obiter dicta or judicial dicta, the Brooks Court simply did not address whether the termination of parental rights automatically terminated the duty to pay child support.

. As noted earlier, the legislature merged the CPA and the AJJA, effective January 1, 2009. Act No. 2008-277, Ala. Acts 2008.

. The juvenile court has exclusive original jurisdiction over the termination of parental rights. § 12 — 15—30(b)(6) (now § 12-14-114(c)(2), as amended), Ala.Code 1975; H.M.J. v. S.L.A., 964 So.2d 1245 (Ala.Civ.App.2007). Consistent with their respective jurisdiction, both a juvenile court and a circuit court may enter an award of child support. For example, if child support was originally awarded in a divorce proceeding, then a parent whose rights were subsequently terminated would have the ability to file a petition to terminate child support in the circuit court divorcing the parties. If the juvenile court originally ordered child support in a paternity proceeding, then the juvenile court would have jurisdiction to determine whether child support should be terminated and could do so in conjunction with a subsequent petition and hearing to terminate parental rights.

. I further note that it is not always necessary to terminate parental rights in order to effectively remove a child from bad custody circumstances. Especially where a meaningful parent-child bond has formed, our courts sometimes have overlooked the alternative of leaving a child in a permanent custody arrangement with a relative or other custodian (typically one who has already established a custodial relationship with the child in which the child will be raised day-to-day in a nurturing and loving environment), while retaining some residual relationship with the parent. Such a residual relationship may allow for *1141 occasional supervised or other visitation, child support, and/or inheritance rights, that may have pecuniary or even psychological benefits that, when weighed in the balance, cause it to be in the best interest of the child. See, e.g., Ex parte Beasley, 564 So.2d at 954-55 (noting that “[o]nce the court has complied with this two-prong test — that is, once it has determined that the petitioner has met the statutory burden of proof and that, having considered and rejected other alternatives, a termination of parental rights is in the best interest of the child — it can order the termination of parental rights”); D.M.P. v. State Dep’t of Human Resources, 871 So.2d 77, 95 n. 17 and accompanying text (Ala.Civ.App.2003) (plurality opinion discussing Ex parte Beasley and other cases); State Dep't of Human Res. v. A.K., 851 So.2d 1, 18 (Ala.Civ.App.2002) (Murdock, J., dissenting); D.C. v. J.C., 842 So.2d 17, 20 (Ala.Civ.App.2002) (reversing a termination of parental rights on the ground "that a viable alternative' to terminating parental rights exists in this case which is to maintain the present situation — maintain custody with the paternal grandparents and maintain the supervised visitation.... [Tjhe record does not indicate that the parents pose any physical or emotional hariii to the child.”); W.L.H. v. B.L.M., 829 So.2d 173, 175-76 (Ala.Civ.App.2002) (Murdock, J., concurring in the result, joined by two other judges).

. We should not lose sight of the fact that the termination of parental rights is the most Draconian of measures taken by the civil law, resulting in a complete and permanent severance of the most precious of all human relationships. There are those cases that come *1144 before the appellate courts of this State in which the record suggests that an effort to terminate has occurred because of animosity or spite, out of convenience, or simply to accommodate a new spouse who wishes to adopt a child. Even in cases initiated by DHR, my experience is that the call can be close and the judgment difficult. Although these cases may represent a minority of all termination proceedings, I believe this Court should be far more reluctant than it appears to be today to remove a dynamic that, at least in some cases, may be serving as a needed tempering influence on such petitioners.